20 P.3d 1027 (2001)
105 Wash.App. 622
STATE of Washington, Respondent,
v.
Donald Theodore TOWNSEND, Appellant.
No. 19304-7-III.
Court of Appeals of Washington, Division 3, Panel Nine.
April 5, 2001.
*1029 Paul J. Wasson II, Spokane, for Appellant.
Kevin M. Korsmo, Deputy Prosecuting Attorney, Spokane, for Respondent.
*1028 KATO, J.
Donald T. Townsend appeals his conviction for attempted second degree rape of a child. He contends the trial court erroneously admitted into evidence copies of e-mail and client-to-client computer messages between himself and a fictitious 13-year-old girl with whom he corresponded. He also contends the conviction is unlawful because it is impossible to attempt to rape a fictitious child and because the State failed to prove he took a substantial step toward commission of child rape. We affirm.
Based on tips from two citizen informants, Spokane Police Detective Jerry Keller suspected that Mr. Townsend was attempting to set up sexual liaisons with minor girls on the computer. To investigate the matter, the detective created a fictitious 13-year-old girl named "Amber." He established a Hotmail Internet e-mail account for "Amber." He *1030 also created an account for "Amber" on ICQ, an Internet discussion software program that allows real-time client-to-client communications.
Beginning in May 1999, "Amber" had several e-mail and ICQ discussions with Mr. Townsend. These communications were saved automatically on Detective Keller's computer, so he was able to store and print them for use as evidence in this case. The e-mail messages pertained to having a face-to-face meeting. The ICQ communications contained very graphic discussions about sex. Mr. Townsend explained to "Amber" how one gets pregnant and how they could avoid getting her pregnant. The details of what he intended to do with "Amber" when they met became increasingly graphic and described sexual intercourse and oral sex. "Amber" eventually told Mr. Townsend she would meet him in a room at a Spokane motel on June 4, 1999. The night before the planned meeting, Mr. Townsend stated in an ICQ message that he wanted to have sex with her the next day. The last ICQ communication was on June 4, 1999, and lasted from 4:57 p.m. to 5:20 p.m. During this communication, Mr. Townsend indicated that he still wanted to have sex with "Amber."
About an hour later, Mr. Townsend knocked on the motel room door, identified himself as Donald, and said he was looking for "Amber." After Detective Keller arrested him, Mr. Townsend admitted he left his apartment to come to the motel to have sex with "Amber," who he believed to be 13 years old, but he had changed his mind. Mr. Townsend admitted sending the ICQ message on June 3, in which he said he wanted to have sex with "Amber" the next day.
Mr. Townsend was charged with attempted second degree rape of a child.[1] Mr. Townsend moved to dismiss, arguing (among other things) that the e-mail and ICQ evidence violated the Washington Privacy Act and there was insufficient evidence of an attempt. The court denied the motion in a memorandum decision that later was incorporated into formal findings of fact and conclusions of law. The court then found Mr. Townsend guilty after a bench trial.
We first consider whether Detective Keller violated the Washington Privacy Act by recording or printing the e-mail messages and ICQ discussions. The statute makes it unlawful to record[2] a
[p]rivate communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication[.]
RCW 9.73.030(1)(a).[3]
This statute is "one of the most restrictive in the nation." State v. Faford, 128 Wash.2d 476, 481, 910 P.2d 447 (1996). Evidence obtained in violation of the statute is inadmissible for any purpose. Id. at 488, 910 P.2d 447.
The State first contends it is unclear whether the communications here were private, because Mr. Townsend was aware that e-mail and ICQ messages are not secure from interception. Whether particular communications are private generally is a question of fact, but the question may be decided as a matter of law if the facts are undisputed and reasonable minds could not differ. State v. Clark, 129 Wash.2d 211, 225, 916 P.2d 384 (1996). The Supreme Court has adopted the dictionary definition of the word "private": "`belonging to one's self ... secret ... intended *1031 only for the persons involved (a conversation)... holding a confidential relationship to something ... a secret message: a private communication ... secretly: not open or in public.'" Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 190, 829 P.2d 1061 (1992) (omissions in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1969) and State v. Forrester, 21 Wash.App. 855, 861, 587 P.2d 179 (1978), review denied, 92 Wash.2d 1006 (1979)).
The subjective intentions of the parties to the communication are among the factors to be considered, as well as other factors bearing on the reasonableness of the participants' expectations, such as the duration and subject matter; the location of the communication and the presence of potential third parties; and the role of the nonconsenting party and his or her relationship to the consenting party. Clark, 129 Wash.2d at 225-27, 916 P.2d 384. The mere possibility that interception is technologically feasible does not render public a communication that is otherwise private. Faford, 128 Wash.2d at 485, 910 P.2d 447 (Privacy Act protects cordless telephone conversations).
Here, Mr. Townsend's messages to "Amber" certainly were intended only for her. His subjective expectations are clear; he specifically asked "Amber" not to "tell anyone about us." Clerk's Papers (CP) at 66. Moreover, the subject matter itself clearly suggests the communications were private. The possibility of interception alone does not refute this suggestion. The communications were private.
The State next contends the communications were not recorded as anticipated by the Privacy Act. The State points out that recording is an inherent function of a computer, and prior cases all involved recording by devices different from the devices used to perform the communications themselves. Even if true, this is a distinction without a legal difference. The communications here were recorded on Detective Keller's computer. As the State appears to concede, only by recording them could Detective Keller read or print them.
The State next contends Detective Keller's computer was not a device as anticipated by the Act. This argument simply ignores the broad language of the statute, which refers to devices "electronic or otherwise designed to record and/or transmit said communication[s] regardless of how such device is powered or actuated." RCW 9.73.030(1)(a); see Kadoranian, 119 Wash.2d at 185, 829 P.2d 1061 (when statutory language is clear, there is no room for judicial interpretation). Detective Keller's computer certainly was designed to record communications such as e-mail and other messages.
The e-mail and ICQ messages thus were private communications transmitted between two individuals that were recorded by a device. The critical issue, then, is whether all of the participants consented to the recording. If so, the recording was not unlawful.
The Privacy Act provides that "consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted." RCW 9.73.030(3). Under this provision, consent is valid if the nature of the communication is such that the parties understand it will be recorded. See In re Marriage of Farr, 87 Wash.App. 177, 184, 940 P.2d 679 (1997) (function of telephone answering machine is to record messages), review denied, 134 Wash.2d 1014, 958 P.2d 316 (1998).
The nature of e-mail is such that, to be useful, it must be recorded. See William Decoste, Sender Beware: The Discoverability and Admissibility of E-Mail, 2 Vand. J. Ent. L. & Prac. 79, 81 (2000) (even deleted messages may remain available for retrieval). A person sends an e-mail message with the expectation that it will be read and perhaps printed by another person. To be available for reading or printing, the message first must be recorded on another computer's memory. Like a person who leaves a message on a telephone answering machine, a person who sends an e-mail message anticipates that it will be recorded. That person thus implicitly consents to having the message recorded on the addressee's computer.
*1032 Because Mr. Townsend understood that his e-mail messages would be recorded on a device that would make the messages available for "Amber" to read, he consented to the recording.
The nature of ICQ client-to-client communications is less clear, because the technology itself does not require that messages be recorded for later use. However, the ICQ privacy policy expressly warns users of "[u]nauthorized exposure of information and material you listed or sent, on or through the ICQ system, to other users, the general public or any other specific entities for which the information and material was not intended by you." CP at 136. And ICQ expressly advises users that if they wish not to be exposed to these risks, they should not use the software. Especially pertinent is the following provision:
9. Some versions of the software allow any party to an ICQ session to record the content of the session (messages, URL, chat, chat request and other events). The ICQ program default in some versions is set to record message and other event dialog and traffic.
CP at 139.
By using the ICQ client-to-client communications, Mr. Townsend impliedly consented to recording of the communications by the intended recipient.
The e-mail and ICQ messages were private communications protected by the Washington Privacy Act. However, because Mr. Townsend impliedly consented to the recording of the messages, there was no violation. The trial court correctly concluded the messages were admissible.
Next, we consider whether the evidence established that Mr. Townsend took a substantial step toward committing the crime of second degree child rape. A person is guilty of an attempt if, with intent to commit a specific crime, he or she "does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). Mr. Townsend contends he did not and could not have taken a substantial step toward committing second degree child rape. A person commits second degree rape of a child if he or she "has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1). Thus, to convict Mr. Townsend of attempted second degree child rape, the State was required to prove he took a substantial step toward having sexual intercourse with "Amber."
Mr. Townsend argues in part that he could not have taken such a substantial step because "Amber" was not real. But RCW 9A.28.020(2) expressly provides that factual impossibility is not a defense to a crime of attempt. Under this provision, for example, a person may attempt to possess stolen property even if the property he attempts to possess is not actually stolen. State v. Davidson, 20 Wash.App. 893, 897-98, 584 P.2d 401 (1978), review denied, 91 Wash.2d 1011 (1979). The attempt statute focuses "on the criminal intent of the actor, rather than the impossibility of convicting him of a completed crime." Id. at 897, 584 P.2d 401. It thus makes no difference that Mr. Townsend could not have completed the crime because "Amber" did not exist. He is guilty of the attempt if he intended to have sexual intercourse with her.
Mr. Townsend also contends the evidence was insufficient to show that he took a substantial step toward committing second degree child rape. In this context, we must view the evidence in a light most favorable to the prosecution and must determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980). The court must draw all reasonable inferences in favor of the State. State v. Partin, 88 Wash.2d 899, 906-07, 567 P.2d 1136 (1977). The elements of a crime may be established by either direct or circumstantial evidence, and one type of evidence is no less valuable than the other. State v. Thompson, 88 Wash.2d 13, 16, 558 P.2d 202, appeal dismissed, 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 185 (1977).
*1033 Mere preparation to commit a crime is not an attempt. State v. Workman, 90 Wash.2d 443, 584 P.2d 382 (1978). A person's "conduct is not a substantial step `unless it is strongly corroborative of the actor's criminal purpose.'" Id. at 451, 584 P.2d 382 (quoting Model Penal Code § 5.01(2)); see State v. Smith, 115 Wash.2d 775, 782, 801 P.2d 975 (1990). Conduct that may constitute a substantial step includes "`enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission.'" Workman, 90 Wash.2d at 451-52 n. 2, 584 P.2d 382 (quoting Model Penal Code § 5.01(2)(b)).
The evidence shows that Mr. Townsend sought to entice "Amber" to meet with him at the motel room to engage in sexual intercourse. This alone would support the conviction, but Mr. Townsend went even further: He appeared at the door where the crime was to have occurred. A reasonable inference is that in going there he intended to engage in sexual intercourse with "Amber." From this evidence, a rational factfinder could have found that Mr. Townsend took a substantial step toward committing the crime of second degree child rape.
There was no error.
Affirmed.
WE CONCUR: KURTZ, C.J., SWEENEY, J.
NOTES
[1] Mr. Townsend initially was charged with two additional counts involving sexually explicit materials discovered in a post-arrest search of his residence. After the superior court concluded the search was unlawful and suppressed this evidence, the State amended the information to include only the count at issue here.
[2] The statute also makes it unlawful to "intercept" private communications. RCW 9.73.030(1). Mr. Townsend does not contend the communications here were intercepted within the meaning of the statute.
[3] The State does not contend the Privacy Act is preempted by federal law. See State v. Williams, 94 Wash.2d 531, 538-39, 617 P.2d 1012, 24 A.L.R.4th 1191 (1980).