57 P.3d 255 (2002)
147 Wash.2d 666
STATE of Washington, Respondent,
v.
Donald T. TOWNSEND, Petitioner.
No. 71070-8.
Supreme Court of Washington, En Banc.
Argued January 29, 2002.
Decided November 7, 2002.
*257 Paul Wasson, Spokane, for Petitioner.
Steven Tucker, Spokane County Prosecutor, Kevin Korsmo, Deputy, Spokane, for Respondent.
*256 ALEXANDER, C.J.
The principal issue we are called upon to resolve is whether a Spokane police officer violated a provision in Washington's privacy act when he saved and printed e-mail and real time client-to-client ICQ messages between Donald Townsend and a fictitious child. We conclude that the act was not violated because Townsend impliedly consented to the recording of his e-mail and ICQ communications. We, therefore, uphold the decision of the Court of Appeals affirming Townsend's conviction in superior court on a charge of attempted second degree rape.

I
The facts which we set forth hereafter are largely gleaned from the trial court's extensive and unassailed findings of facts. Based on tips received from a citizen informant, a detective with the Spokane Police Department, Jerry Keller, suspected that Donald Townsend was attempting to use his computer to arrange sexual liaisons with young girls.[1] Acting on this information, Keller set up a "sting operation" whereby he established a "Hotmail" Internet e-mail account with a screen name of "ambergirl87" (Amber), a fictitious thirteen-year-old girl. Clerk's Papers (CP) at 334.
Beginning in May 1999, Townsend, using the screen name "Big Red", but identifying himself as Donald Townsend, began corresponding with Amber via e-mail. CP at 335. These communications from Townsend were stored automatically on Keller's computer. This enabled Keller to read the messages at his leisure and to print them for later use as evidence. The e-mail communications from Townsend contained overtures for a meeting with Amber and indications that he wanted to "have fun" with her. CP at 68. In an e-mail message sent on June 1, 1999, Townsend indicated to Amber that "[I] need a promise from you ok don't tell anyone about us." CP at 66.
*258 At the urging of Townsend, Detective Keller, under the guise of Amber, "set up" an ICQ account on June 1, 1999. CP at 335. ICQ is an Internet discussion software program that allows users to communicate "across the Internet to chat freely almost as if you were talking on the phone but typing on the keyboard." Verbatim Report of Proceedings at 44. Keller's ICQ program was "defaulted" to automatically record the ICQ messages he received. CP at 325. The ICQ communications between Townsend and Amber contained graphic discussions about sexual topics including sexual intercourse. Shortly after the ICQ communications began, Townsend made arrangements via ICQ to meet Amber at a Spokane motel room on June 4, 1999. The night before the scheduled meeting, Townsend sent Amber an ICQ message in which he stated "he wanted to have sex with [her]" the following day. CP at 336. On June 4, 1999, about an hour before the arranged meeting, Townsend sent his last ICQ message to Amber indicating that "he still wanted to have sex" with her. CP at 336.
Townsend went to the motel at the appointed time and knocked on the door of the room in which he believed Amber was located. After asking to see Amber, he was arrested by Detective Keller. Townsend later admitted that he left his apartment intending to have sex with Amber, who he believed was thirteen, but thereafter "changed his mind." CP at 336. Townsend admitted to the police officers that he sent the ICQ message on June 3, 1999, in which he said he wanted to have sex with Amber the next day.
Townsend was charged in Spokane County Superior Court with attempted second degree rape of a child. Before trial, Townsend moved to dismiss the charge, arguing, among other things, that Keller's recording and printing of his private e-mail and ICQ communications violated Washington's privacy act, chapter 9.73 RCW, thus rendering any evidence of the communications inadmissible. His motion was denied. After a bench trial, Townsend was found guilty of the charged offense. He was sentenced to 89 months in prison.
Townsend appealed his conviction to Division Three of the Court of Appeals. Although the Court of Appeals concluded that the aforementioned computer communications were subject to the privacy act in that they were "private" and had been "recorded by a device" within the meaning of RCW 9.73.030(1)(a), it affirmed Townsend's conviction on the basis that "Townsend impliedly consented to the recording[s]." State v. Townsend, 105 Wash.App. 622, 629, 630, 20 P.3d 1027, review granted, 144 Wash.2d 1016, 32 P.3d 283 (2001). In doing so it also rejected Townsend's sufficiency of the evidence argument that because there was a detective at the other end of the internet, rather than a child, it was factually impossible for him to commit the charged crime. We thereafter granted Townsend's petition for review.

II
Townsend maintains that the Court of Appeals erred in holding that he impliedly consented to the recording and printing of his "private" e-mail and ICQ communications. The State, while not disputing that the Court of Appeals correctly concluded that Townsend consented to the recording of his computer communications, asserts in its answer to Townsend's petition for review that the Court of Appeals erred in holding that the communications were "private" and "record[ed]" by a "device" as those terms are used in Washington's privacy act. Thus it maintains that the communications between Townsend and Amber were not subject to the privacy act.
A provision in Washington's privacy act provides that it is unlawful to record any:
[p]rivate communication transmitted by telephone, telegraph, radio, or other device between two or more individuals ... [using] any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication.
RCW 9.73.030(1)(a). This statute is considered one of the most restrictive in the nation.
*259 Evidence obtained in violation of the statute is inadmissible in a criminal case. RCW 9.73.050.
We must first determine if the communications between Townsend and the fictitious child, Amber, fall under the act as private communications recorded by a device. If we answer those questions in the affirmative, we must then determine if the Court of Appeals was correct in concluding that Townsend consented to the recording of his private communications.
A. Were the communications private?
As noted above, Townsend asserts that his e-mail and ICQ communications to Amber were private communications and, thus, not lawfully recorded without his consent. The State suggests that it "is unclear under the facts presented" whether the communications between Townsend and Amber "were private communications under this Act." Br. of Resp't at 6.
The Court of Appeals correctly observed that the question of whether a particular communication is private is generally a question of fact, but one that may be decided as a question of law if the facts are undisputed. State v. Clark, 129 Wash.2d 211, 225, 916 P.2d 384 (1996). This court has adopted the dictionary definition of the word "private": "`"belonging to one's self ... secret ... intended only for the persons involved (a conversation) ... holding a confidential relationship to something ... a secret message: a private communication ... secretly: not open or in public."'" Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 190, 829 P.2d 1061 (1992) (quoting State v. Forrester, 21 Wash.App. 855, 861, 587 P.2d 179 (1978), review denied, 92 Wash.2d 1006 (1979) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1969))).
The subjective intention of the parties to the communication is among the factors that the court may consider in determining if a communication is private. A court may also consider other factors bearing on the reasonableness of the participants' expectations, such as the duration and subject matter of the communication; the location of the communication and the presence of potential third parties; and the role of the nonconsenting party and his or her relationship to the consenting party. Clark, 129 Wash.2d at 225-27, 916 P.2d 384. The mere possibility that interception of the communication is technologically feasible does not render public a communication that is otherwise private. See State v. Faford, 128 Wash.2d 476, 485, 910 P.2d 447 (1996), in which we held that Washington's privacy act protects against the monitoring of cordless telephone conversations.
We hold, as did the Court of Appeals, that Townsend's communications to the fictitious child, Amber, were private. We reach that conclusion because it is readily apparent from the undisputed facts that Townsend's subjective intention was that his messages to Amber were for her eyes only. That intent is made manifest by Townsend's message to Amber to not "tell anyone about us." CP at 66. In addition, the subject matter of Townsend's communications to Amber strongly suggests that he intended the communications to be private. While interception of these messages was a possibility, we cannot say that Townsend's subjective intention that his communications were private was unreasonable under the circumstances.
B. Were the communications recorded by a device?
In concluding that the private e-mail and ICQ communications between Townsend and Amber had been recorded as contemplated by the act, the Court of Appeals rejected the State's argument that the communications were not recorded because "`[r]ecording' is simply an inherent part of the use of a computer" and that prior "cases all involved use of a device different than the device used to perform the communication itself." Br. of Resp't at 7, 8. We agree with the Court of Appeals that it makes no difference that the recording was accomplished on a device that was used in the communication. The plain fact is that the communications from Townsend to Amber were recorded on Detective Keller's computer. That the communications were recorded on a device that can also be used to communicate *260 is, as the Court of Appeals observed, "a distinction without a legal difference." Townsend, 105 Wash.App. at 628, 20 P.3d 1027.[2]
We also reject the State's argument that Detective Keller's computer was not a device as contemplated by the privacy act. We fully subscribe to the Court of Appeals' conclusion that the language of the statute is broad and refers to devices "`electronic or otherwise designed to record and/or transmit said communications regardless of how such device is powered or actuated.'" Townsend, 105 Wash.App. at 628, 20 P.3d 1027 (quoting RCW 9.73.030(1)(a)). Detective Keller's computer is such a device.
C. Did Townsend consent to the recording of his private communications?
Having determined that the private e-mail and ICQ communications between Townsend and Amber fall under the purview of the aforementioned provision in Washington's privacy act because they were recorded by a device, we must next confront the question of whether Townsend consented to the recording of his private communications. If he did the recording was not unlawful. That is so because, as we have noted above, it is not unlawful to record a communication on a device where the "consent of all the participants in the communication" has been obtained. RCW 9.73.030(1)(a). A party is deemed to have consented to a communication being recorded when another party has announced in an effective manner that the conversation would be recorded. RCW 9.73.030(3). In addition, a communicating party will be deemed to have consented to having his or her communication recorded when the party knows that the messages will be recorded. See In re Marriage of Farr, 87 Wash.App. 177, 184, 940 P.2d 679 (1997), review denied, 134 Wash.2d 1014, 958 P.2d 316 (1998), in which the Court of Appeals held that a party had consented to the recording of his messages when he left the message on a telephone answering machine, the only function of which is to record messages.
Although Townsend did not explicitly announce that he consented to the recording of his e-mail and ICQ messages to Amber, we are of the view that his consent may be implied. Insofar as Townsend's e-mail messages are concerned, in order for e-mail to be useful it must be recorded by the receiving computer. We entirely agree with the observation of the Court of Appeals that:
A person sends an e-mail message with the expectation that it will be read and perhaps printed by another person. To be available for reading or printing, the message first must be recorded on another computer's memory. Like a person who leaves a message on a telephone answering machine, a person who sends an e-mail message anticipates that it will be recorded. That person thus implicitly consents to having the message recorded on the addressee's computer.
Townsend, 105 Wash.App. at 629, 20 P.3d 1027. In sum, because Townsend, as a user of e-mail had to understand that computers are, among other things, a message recording device and that his e-mail messages would be recorded on the computer of the person to whom the message was sent, he is properly deemed to have consented to the recording of those messages.
The question of whether the Court of Appeals erred in holding that Townsend consented to the recording of his ICQ communications is a closer question than the question of whether his consent to the recording of his e-mail messages may be implied. We say that because, unlike e-mail, ICQ technology *261 does not require that messages be recorded for later use. Rather, it functions with both communicators on-line at the same time. In other words, each party talks in "real time" by sending their message on to the computer monitor of the other party who may respond with an answering message. Necessarily, the computer message is saved long enough to allow the person to whom the communication is addressed to answer. Whether the ICQ communication is saved for a longer period of time depends on the computer software used by the recipient.[3] Here, as we have noted above, the recipient of the ICQ messages was Detective Keller and his ICQ Software program was defaulted to automatically record messages from Townsend that he received. The more pertinent question is whether Townsend was aware that the software was or could be defaulted. Significantly, Townsend's ICQ contained a "privacy policy" that specifically warned users that "[s]ome versions of the software allow any party to an ICQ session to record the content of the session" and that "[t]he ICQ program default in some versions is set to record message and other event dialog and traffic." CP at 139. The ICQ privacy policy also warned users that they risk "[u]nauthorized exposure of information and material you listed or sent, on or through the ICQ system, to other users, the general public or any other specific entities for which the information and material was not intended by you." CP at 136. In addition, the ICQ Software privacy policy warned users against use of ICQ Software for "`Content Sensitive' applications and purposes" and advised them that if they wish not to be exposed to these risks, they should not use the software. CP at 136. The Court of Appeals concluded that by "using the ICQ client-to-client communications, Mr. Townsend impliedly consented to recording of the communications" to Amber. Townsend, 105 Wash.App. at 630, 20 P.3d 1027.
Townsend asserts that the Court of Appeals' decision conflicts with this court's opinions in State v. Faford, 128 Wash.2d 476, 481, 910 P.2d 447 (1996); Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 192, 829 P.2d 1061 (1992); State v. Young, 123 Wash.2d 173, 186, 867 P.2d 593 (1994); and State v. Myrick, 102 Wash.2d 506, 513-14, 688 P.2d 151 (1984). Pet. for Review at 3-4. He primarily focuses on our opinion in Faford, in which we rejected an argument by the State that warning labels on cordless telephones and/or in the owner's manual constituted a waiver of one's privacy protections. Pet. for Review at 4 (quoting Faford's holding that "`the mere possibility that intrusion on otherwise private activities is technologically feasible'" does not strip citizens of their privacy rights. Faford, 128 Wash.2d at 485, 910 P.2d 447).
We believe our decision in Faford is not controlling here. That is so because in Faford we were confronted with communications over a cordless telephone that were intercepted by someone who was not a party to the telephone conversations. There was no suggestion there that the communicators had either consented to the communications being recorded or advised that they might be recorded. Here, the recording of the ICQ client-to-client communication was undertaken not by a third party but by a party who was the recipient of the communication. Furthermore, as we have observed, the ICQ privacy policy advised users such as Townsend that if they did not wish to be subjected to the risks of recording, they should not use the software.
Although no evidence was presented at trial establishing that Townsend had acquainted himself with the ICQ privacy policy, his familiarity with it may reasonably be inferred. In that regard we agree with the superior court judge who ruled on Townsend's motion to dismiss that the saving of messages is inherent in e-mail and ICQ messaging. In addition, the fact that Townsend encouraged the recipient of his ICQ messages, the fictitious Amber, to set up an ICQ account strongly suggests that he was familiar with the technology. We are satisfied, in sum, that Townsend was informed by ICQ software privacy policy and by his general understanding of ICQ technology that the *262 recording of ICQ messages by a recipient is a possibility. Consequently, like other users of ICQ technology, he took a risk that his messages might be recorded by the recipient. The Court of Appeals, therefore, correctly concluded that under these circumstances Townsend impliedly consented to the recording of his ICQ messages.

III
Finally, we must determine if there is sufficient evidence in the record that Townsend took a substantial step toward commission of the crime of second degree rape. In making that decision, we must view the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980).
In order to be found guilty of an attempt to commit a crime, the defendant must take a substantial step toward commission of that crime. RCW 9A.28.020(1). A person does not take a substantial step unless his conduct is "strongly corroborative of the actor's criminal purpose." State v. Aumick, 126 Wash.2d 422, 427, 894 P.2d 1325 (1995); State v. Workman, 90 Wash.2d 443, 451, 584 P.2d 382 (1978) (citation omitted). Mere preparation to commit a crime is not a substantial step. Workman, 90 Wash.2d at 449-50, 584 P.2d 382.
The gist of Townsend's argument on this point is that "[h]e could never take a `substantial step' toward completing the crime with `Amber' because `Amber' was in reality Detective Keller." Pet. for Review at 4. The Court of Appeals properly rejected this argument noting that "RCW 9A.28.020(2) expressly provides that factual impossibility is not a defense to a crime of attempt." Townsend, 105 Wash.App. at 631, 20 P.3d 1027. The attempt statute focuses on the actor's criminal intent, rather than the impossibility of convicting the defendant of the completed crime. We agree with the Court of Appeals that "[i]t thus makes no difference that Mr. Townsend could not have completed the crime because `Amber' did not exist. He is guilty ... if he intended to have sexual intercourse with her." Townsend, 105 Wash.App. at 631, 20 P.3d 1027.

IV
For the reasons set forth above, we affirm the Court of Appeals decision in Townsend in all respects. In our view, the Court of Appeals properly held that: (1) Washington's privacy act applies to computers that can record and save messages; (2) Townsend consented to the recording of his private e-mail and ICQ communications by the recipient of the communications; and (3) there is sufficient evidence that Townsend took a substantial step toward the commission of the crime of attempted second degree rape.
SMITH, JOHNSON, MADSEN, CHAMBERS and OWENS, JJ., concur.
BRIDGE, J. (concurring).
I agree with the majority that Townsend took a substantial step toward attempted rape. I disagree, however, with the majority's conclusion that Washington's privacy act, chapter 9.73 RCW, applies to Townsend's computer communications. Instead, I would hold that the act seeks to protect individuals against surreptitious recording and interception of communications by a party only where the device used to record the conversation is different from the device used for the communication. Therefore, the act would not apply when the device used to communicate is the same instrument that records the communication.
There are two types of computer communications at issue in this case. The first is standard e-mail communication in which the sender composes a message and sends it via the internet to the recipient's computer where it is recorded or stored until the recipient decides to "open" it. This process is most analogous to a letter sent through the mail. Although not addressed in Washington cases, other jurisdictions have found that the reasonable expectation of privacy in an e-mail, like a letter sent through the mail, ends when the recipient opens it. Guest v. Leis, 255 F.3d 325, 333 (6th Cir.2001); Commonwealth v. Proetto, 771 A.2d 823, 831-33 (Pa.Super.2001) (holding that there is no reasonable *263 expectation of privacy in e-mail messages sent by man to 15-year-old girl), appeal granted, 567 Pa. 667, 790 A.2d 988 (2002). Once opened, the recipient has complete freedom to do what he or she wishes with the communication. See United States v. Maxwell, 45 M.J. 406, 417-18 (1996).
The second type of computer communication at issue is ICQ, or instant messaging, where the conversation between the parties occurs in "real time." The ICQ program used by Detective Keller in his communications with Townsend had an automatic recording function set as its default. Clerk's Papers (CP) at 139. Some ICQ programs do not have this default, hence the communications are "recorded" only by an affirmative action of the recipient. This distinction does not change the fact that all information received or transmitted by the computer is recorded and stored on the computer's hard drive and is therefore available for later retrieval.
This case addresses only whether the e-mail and ICQ communications were "recorded" within the meaning of the act. To determine whether these types of communications are "recorded" needs only a simple analysis. In both cases, the "recording" of the incoming communication is an inherent function of the computer and not the result of some affirmative action by an individual. It is that affirmative action, intended to surreptitiously record conversations or to intercept the communications of others, which the Legislature intended the act to prohibit. See HOUSE JOURNAL, 40th Leg., 1st Ex.Sess., 2030-31 (Wash.1967).
The Court of Appeals stated, "Detective Keller's computer certainly was designed to record communications such as e-mail and other messages." State v. Townsend, 105 Wash.App. 622, 629, 20 P.3d 1027 (2001). The majority agrees, stating that "the language of the statute is broad and refers to devices `"electronic or otherwise designed to record and/or transmit said communications regardless of how such device is powered or actuated."'" Majority at 260 (quoting Townsend, 105 Wash.App. at 628, 20 P.3d 1027 (quoting RCW 9.73.030(1)(a))).
Contrary to the majority's opinion, however, the plain language of the statute is narrow. In relevant part, RCW 9.73.030 states,
(1) ... it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated without first obtaining the consent of all the participants in the communication.
(Emphasis added.)
Cases interpreting "recording" under the act have dealt exclusively with devices that were specifically designed to record. State v. Clark, 129 Wash.2d 211, 214-15, 916 P.2d 384 (1996) (audio portion of camera used for recording drug deals); State v. Faford, 128 Wash.2d 476, 479-80, 910 P.2d 447 (1996) (police scanner); State v. Jimenez, 128 Wash.2d 720, 722, 911 P.2d 1337 (1996) (interception and recording of drug transactions); State v. Smith, 80 Wash.App. 535, 537, 910 P.2d 508 (1996) (body wire); Schonauer v. DCR Entm't, Inc., 79 Wash.App. 808, 819, 905 P.2d 392 (1995) (audiotape recording of telephone conversation); State v. Gonzalez, 71 Wash.App. 715, 716-17, 862 P.2d 598 (1993) (unauthorized recording by "body mike").
Even when an instrument is designed specifically to record, the Court of Appeals has recognized correctly that a "device" that records under RCW 9.73.030 must be separate from the equipment used in the communication. State v. Wojtyna, 70 Wash.App. 689, 696, 855 P.2d 315 (1993). In Wojtyna, Snohomish County police confiscated a telepager from a local cocaine dealer incident to an arrest. Id. at 691, 855 P.2d 315. The telepager was left on to accept incoming telephone calls and the device recorded incoming telephone numbers. Id. A detective called one of the incoming telephone numbers and arranged a meeting with the defendant *264 to exchange a substance thought by the defendant to be cocaine for money. Id. Police arrested the defendant and he was convicted of attempted possession of a controlled substance. Id. The defendant moved to suppress the evidence, arguing that it was obtained in violation of the act. Id. In affirming the trial court's denial of the motion, the Court of Appeals stated "it is doubtful whether the pager constitutes a `device' within the meaning of the [act]" because the telepager was merely displaying the recorded telephone numbers. Id. at 696, 855 P.2d 315 (citing United States v. Meriwether, 917 F.2d 955, 960 (6th Cir.1990)).
Washington courts construction of the act to include only interceptions committed by an actual "device" also supports the conclusion that the act intended the recording device to be separate from the instrument transmitting the communication. State v. Corliss, 123 Wash.2d 656, 662, 870 P.2d 317 (1994) (holding that act of tipping a telephone so that police could hear conversation was not conduct that implicated act because officer did not intercept communication with device); State v. Gonzales, 78 Wash.App. 976, 979-82, 900 P.2d 564 (1995) (holding no violation of act for police officer to answer phone in defendant's home in his absence because no device was used and no interception had occurred); State v. Bonilla, 23 Wash.App. 869, 870-72, 598 P.2d 783 (1979) (holding that officer listening on extension phone did not violate act because an extension telephone did not constitute a separate recording or transmitting device).
Moreover, the act seeks to prevent surreptitious and affirmative acts by a party who purposely intercepts and records private communications. We have stated that the intent of the act was to discourage "intentional, persistent eavesdropping on another's private affairs." Faford, 128 Wash.2d at 486, 910 P.2d 447. The legislative history also indicates that the Legislature enacted RCW 9.73.030 to prohibit the use of equipment to eavesdrop. See HOUSE JOURNAL, supra. During the bill's debate, Representative Blackstrom asked, "Do we have it clear that this bill precludes eavesdropping?" Id. at 2031, 910 P.2d 447. Representative Heavey responded,
Right now we have no laws that prevent eavesdropping. Somebody can eavesdrop if they have the equipment to do it. This law prevents them from doing it, but it does permit, in rare instances with court approval....

Id. (emphasis added).
To expand the act to include e-mail and ICQ communications would produce the absurd result of making all electronic communication via computers criminal by virtue of how the communication is inherently transmitted and stored on the recipient's computer. See State v. Fjermestad, 114 Wash.2d 828, 835, 791 P.2d 897 (1990) (stating that "statutes should be construed to effect their purpose and unlikely, absurd or strained consequences should be avoided"). For e-mail communications to be useful, they must be recorded. See William DeCoste, Sender Beware: The Discoverability and Admissibility of E-mail, 2 VAND. J. ENT. L. & PRAC. 79, 81 (2000). Technically, e-mail messages are permanently recorded since "most email programs keep copies of every message a user ever wrote, every message the user ever received, and every message the user deleted." David T. Cox, Litigating Child Pornography and Obscenity Cases in the Internet Age, 4 J. TECH. L. & POL'Y ¶ 114 (1999). Although some e-mail services may offer the possibility of "shredding" an e-mail message, arguably the equivalent of actually deleting it, the e-mail file may still be retrievable using certain software. Id. "A deleted file is really not a deleted file, it is merely organized differently." Id. at ¶ 100.
Consequently, to hold that the act covers electronic computer communication in this case would render both ICQ messaging and e-mail communication criminal, even if the recipient of the electronic communication wanted to delete the message files to avoid violating the act. It is not this type of unintentional and nonaffirmative recording of private communications that the Legislature intended to prohibit when it enacted RCW 9.73.030.[1]See Faford, 128 Wash.2d at 486, 910 P.2d 447.
*265 Therefore, I would hold that Washington's privacy act does not encompass e-mail and ICQ messaging because the communication was not recorded by a separate instrument nor was the communication surreptitiously or intentionally recorded. Any expansion of the act to encompass these communications must be left to the Legislature, which is in the best position to weigh the competing policies.
IRELAND, J., concurs.
SANDERS, J. (dissenting).
The majority engrafts by inference an unstated consent exception to Washington's privacy act ("one of the most restrictive in the nation," majority at 259); and then implies consent to satisfy the inferred exception (majority at 260). Inference plus implication equals loss of privacy.
The fact of the matter is Townsend did not actually consent to recording his private ICQ messages and, unlike e-mail, he had no reason to believe these particular ICQ messages would necessarily be recorded prior to viewing by the intended recipient. The most that can be said is that the extremely technologically astute communicator might be aware that under some circumstances the ICQ message might be recorded. See majority at 260-261. But that isn't enough.
Although the majority refuses to be bound by our holding previously expressed in State v. Faford, 128 Wash.2d 476, 485, 910 P.2d 447 (1996) that "the mere possibility that intrusion on otherwise private activities is technologically feasible" does not equate to consent for that to happen (majority at 261), it does not overrule Faford. Nor does it convincingly distinguish it by merely attempting to differentiate between recording by the intended recipient and recording by a third person. I see no such distinction in the statute. The statute prohibits recording by either.
Likewise, the distinction made by the concurring opinion is also not found in the statute. According to the concurrence, the privacy act applies only to communications recorded on a device different from the device used to communicate. Concurring opinion at 262, 263-264. To the contrary, RCW 9.73.030 prohibits any recording of private communications "by any device electronic or otherwise designed to record and/or transmit said communication." (Emphasis added.) To that extent, I agree with the majority and Court of Appeals. See majority at 260; State v. Townsend, 105 Wash.App. 622, 628, 20 P.3d 1027 (2001) (noting the kind of distinction made by the concurrence is one "without legal difference").[1]
The majority is simply rewriting the statute to allow invasions of privacy when it is the state in a criminal investigation that does the invading. But protection of our privacy from the government is an important reason *266 the legislature enacted this statute. So too, the "possibility" that the state may invade our privacy, a possibility that this majority opinion makes more probable, is hardly a legal justification for the unlawful practice to continue nor adequate grounds to conclude one has "consented" to the very invasion which the statute is designed to prohibit.
"We recognize as technology races ahead with ever increasing speed, our subjective expectations of privacy may be unconsciously altered. Our right to privacy may be eroded without our awareness, much less our consent. We believe our legal right to privacy should reflect thoughtful and purposeful choices rather than simply mirror the current state of the commercial technology industry."
Faford, 128 Wash.2d at 485, 910 P.2d 447 (quoting State v. Young, 123 Wash.2d 173, 184, 867 P.2d 593 (1994)).
Accordingly I dissent.
NOTES
[1] The informant contacted Detective Keller after engaging in Internet chat with Townsend. According to the informant Townsend stated during the chat that he wanted to have sexual contact with young girls. Townsend also sent the informant four pictures via the Internet. One picture was of Townsend and another was of Townsend's wife. The third picture was of a clothed female who appeared to be 14 or 15 years of age. The fourth picture was of a completely nude female who appeared to be between 16 and 18 years of age. She was posing with her legs spread apart.
[2] In her concurring opinion, Justice Bridge supports the notion that Washington's privacy act does "not apply when the device used to communicate is the same instrument that records the communication." Concurrence at 262. In our view, the concurring opinion construes the act too narrowly and pays insignificant heed to RCW 9.73.030(1)(a), which provides that it is unlawful to record a private transmission on "any device." While one could certainly mount a cogent argument for the proposition that the privacy act should not apply when the recording of a transmission is done in a non-surreptitious way on a device that is also used for communication, the plain language of the statute covers such recording. The legislature may, however, wish to consider amending the statute in light of developments in technology. It is, as the concurrence correctly suggests, "in the best position to weigh the competing policies." Concurrence at 265.
[3] As Justice Bridge noted in her concurring opinion, "all information received or transmitted by the computer is recorded and stored on the computer's hard drive and is therefore available for later retrieval." Concurrence at 263.
[1] I do not propose that all uses of a computer would be excluded from the act. For example, a person who uses a computer to "hack" into a third party's computer in order to record that party's e-mail communications or other data, would be subject to the act because his or her action clearly involves an affirmative effort to intercept the communication or data. In contrast, the "recording" involved in this case was not an affirmative interception nor was it done by separate equipment.
[1] I also note the concurring opinion's reliance on legislative history. According to the concurrence, RCW 9.73.030 was intended to prohibit only surreptitious recording of communications by some affirmative action. Concurring opinion at 264. The plain language of the statute makes no such limitation. In support, the concurrence relies on legislative history from 1967. Id. at 263-264. Putting aside the fact that electronic communication, such as e-mail or ICQ, hardly could have been on the minds of legislators decades before such forms of communications were available to the public, resort to legislative history is appropriate only if the statute in question is ambiguous. Cherry v. Muni. of Metro. Seattle, 116 Wash.2d 794, 799, 808 P.2d 746 (1991). Since RCW 9.73.030 is not ambiguous, nor does the concurrence claim it is, the plain language of the statute controls. Parkhurst v. City of Everett, 51 Wash.2d 292, 294, 318 P.2d 327 (1957) ("If the words employed in the declaring part of a statute be plain, unambiguous, and well understood according to their natural and ordinary sense and meaning, the statute furnishes a rule of construction beyond which a court cannot go.") (citing Tsutakawa v. Kumamoto, 53 Wash. 231, 101 P. 869, 102 P. 766 (1909)); Shelton Hotel Co. v. Bates, 4 Wash.2d 498, 507, 104 P.2d 478 (1940). I would therefore not further infringe our privacy protections by requiring those whose private communications have been wrongfully intercepted to establish such was the result of some "affirmative action."