207 P.3d 1278 (2009)
STATE of Washington, Respondent,
v.
Rasheed WHITE, Appellant.
No. 37263-1-II.
Court of Appeals of Washington, Division 2.
May 27, 2009.
*1279 Rebecca Wold Bouchey, Attorney at Law, Mercer Island, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Atty Office, Tacoma, WA, for Respondent.

PART PUBLISHED OPINION
VAN DEREN, C.J.
¶ 1 Rasheed White appeals his conviction for attempted second degree child rape, arguing that the evidence was insufficient to support his conviction.[1] We affirm.

FACTS
¶ 2 On Saturday, May 12, 2007, at about 2:00 pm, 13 year old A. C.[2] went to Ricardo Mendoza's house to watch television. A.C., who is seven years younger than Mendoza, went to Mendoza's house approximately four times per week. In the late afternoon or early evening of May 12, Mendoza's mother's boyfriend, Vinnie, and his son[3] arrived at Mendoza's house, accompanied by White. White, age 30, had been drinking and continued to drink a 40-ounce bottle of beer after he arrived.
¶ 3 As he often did, A.C. went into Mendoza's mother's bedroom and watched television while sitting on the bed. At some point during the evening, Mendoza and Vinnie's son went to the store, leaving White and Vinnie watching television in the living room.[4] After they left, White walked into the bedroom and closed the door. He walked over to A.C., grabbed A.C.'s buttocks through his clothes, placed his penis within six inches of A.C.'s face, and told A.C. to perform oral sex on him. A.C. refused twice and, when he tried to leave the room, White punched him in the face. A.C. tried to leave the room again and White punched him in the face again. A.C. returned to the bed and White eventually left the bedroom.
¶ 4 After White left the bedroom, A.C. opened the window, jumped out, and ran *1280 home, leaving his shoes and his bicycle behind. He told his mother what had happened and called the police. Deputy Elizabeth Sekora of the Pierce County Sheriff's Department responded to the call and spoke with him for approximately 20 minutes. A.C. complained that his face was sore and Sekora noticed that A.C's right cheek was red.
¶ 5 Mendoza came home a few minutes after A.C. had jumped out of the window. When he realized A.C. was gone, he asked White what had happened. White told him that A.C. tried to attack him. Mendoza did not believe White's story because A.C. was not very strong. Mendoza was also concerned that A.C. left without his shoes.
¶ 6 After interviewing A.C. at his home, Sekora, along with officer, Pierce County Deputy Sheriff Reigle,[5] went to Mendoza's house.[6] When Sekora and Reigle entered Mendoza's house, they saw a man passed out on the living room couch. Mendoza identified the man as White, who matched the description A.C. had given Sekora. It was "obvious" to Sekora that White had been drinking. 5 Report of Proceedings at RP at 215. Sekora attempted to awaken White by calling to him and prodding him. He was not responsive but Sekora was finally able to rouse him by calling him by his first name, "Rasheed."[7] RP at 214. Sekora arrested White and placed him in handcuffs. He had no trouble walking out of the house to the patrol car and then Sekora advised him of his Miranda[8] rights. When Sekora asked White if he understood those rights, he answered affirmatively.
¶ 7 White denied that he knew A.C. or that he had asked A.C. to perform oral sex. He said that an underage girl had started to engage in oral sex with him but he had stopped her because of her age. White did not slur his words and Sekora could clearly understand everything he was saying.
¶ 8 The State charged White with one count of attempted second degree child rape. The State later amended the information to add that White was on community custody when he committed the crime.
¶ 9 At trial, after the State rested, defense counsel moved to dismiss the charge against White. Defense counsel argued that the State's evidence was insufficient for a reasonable jury to convict White of attempted second degree child rape. The trial court denied the motion, ruling that the evidence, viewed in the light most favorable to the State, established that White had taken substantial steps toward committing the offense.
¶ 10 The jury found White guilty as charged. He appeals.

ANALYSIS

Sufficiency of Evidence
¶ 11 White contends that his conviction for attempted second degree child rape must be reversed because sufficient evidence does not support it. He argues that "[b]ecause the alleged crime was not completed, this case was not just about credibility, it was about intent and a substantial act toward completing the crime." Br. of Appellant at 7. Specifically, he argues that "propositioning A.C. while possibly placing his hand on A.C.'s backside over his clothes" does not constitute a substantial step toward committing the rape but, rather, shows mere preparation. Br. of Appellant at 9. As such, he argues, "It is possible that, absent the involuntary confession,[9] the jury could have found that *1281 White did not form the requisite intent to commit the crime." Br. of Appellant at 7. But criminal intent "may be inferred from all the facts and circumstances" and we disagree that this was a close case that turned on whether White could form the requisite intent. State v. Bencivenga, 137 Wash.2d 703, 709, 974 P.2d 832 (1999).
¶ 12 "Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004). A claim that evidence is insufficient "`admits the truth of the State's evidence' and all reasonable inferences." State v. Brown, 162 Wash.2d 422, 428, 173 P.3d 245 (2007) (quoting State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992)). We view both circumstantial and direct evidence as equally reliable and we "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of evidence." Thomas, 150 Wash.2d at 874-75, 83 P.3d 970.
¶ 13 RCW 9A.44.076 provides that "[a] person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim."[10] The legislature defined sexual intercourse as, among other things, "any act of sexual contact between persons involving the sex organs of one person and the mouth ... of another whether such persons are of the same or opposite sex." RCW 9A.44.010(1)(c).[11]
¶ 14 "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). The trier of fact may infer the intent to commit a crime "from all the facts and circumstances." Bencivenga, 137 Wash.2d at 709, 974 P.2d 832. "A `substantial step' is conduct strongly corroborative of the actor's criminal purpose." In re Pers. Restraint of Borrero, 161 Wash.2d 532, 539, 167 P.3d 1106 (2007) (quoting State v. Townsend, 147 Wash.2d 666, 679, 57 P.3d 255 (2002)), cert. denied ___ U.S. ___, 128 S.Ct. 1098, 169 L.Ed.2d 832 (2008). White argues that his only overt sexual acts were propositioning A.C. and touching A.C.'s buttocks. But the State correctly notes that we look at "substantial steps" rather than "overt acts." Br. of Resp't at 20; RCW 9A.28.020(1); see also 11A Washington Practice: Washington Pattern Jury Instructions: Criminal 100.02, at 386-88 (3d ed.2008).
¶ 15 An attempt must be more than "[m]ere preparation to commit a crime." Townsend, 147 Wash.2d at 679, 57 P.3d 255. "Any slight act done in furtherance of a crime constitutes an attempt if it clearly shows the design of the individual to commit the crime." State v. Price, 103 Wash.App. 845, 852, 14 P.3d 841 (2000). "[A]n attempt conviction does not depend on the ultimate harm that results or on whether the crime was actually completed." State v. Luther, 157 Wash.2d 63, 73, 134 P.3d 205 (2006).
¶ 16 In State v. Sivins, 138 Wash.App. 52, 64-65, 155 P.3d 982 (2007), Division Three of our court held that a man took substantial steps toward second degree child rape when, after sending sexual requests over the Internet to a police intern whom he believed to be a 13 year old girl and enticing her with promises of pizza and vodka, he drove several hours and rented a motel room in her home town. The Sivins court characterized the defendant's Internet communications as evidence of his intent and his subsequent travel and motel rental as the substantial steps. 138 Wash.App. at 64, 155 P.3d 982.
¶ 17 Similarly, in Townsend, our Supreme Court held that there was sufficient evidence for conviction of attempted second degree child rape where the defendant contacted a Spokane police detective, whom he believed to be a 13 year old girl, over the Internet; asked for sexual intercourse; arranged to *1282 meet in a hotel room; and traveled to that hotel room. 147 Wash.2d at 670-71, 679, 57 P.3d 255. This case presents even more persuasive evidence of attempted second degree rape of a child.
¶ 18 White argues that, like the Internet communications in Sivins, his actions only constitute propositioning A.C. for oral sex and that he took no substantial step. He suggests that the facts here are analogous to a hypothetical, noncriminal situation where a man approaches a woman at a bus stop and says that he would like to have sex with her but, after she declines, he takes no further actions except to continue to stand next to her. We reject this analogy.[12]
¶ 19 Here, like Sivins, White asked his victim to provide sexual gratification. Whereas Sivins involved a sting operation that precluded contact with a child, 138 Wash.App. at 64, 155 P.3d 982, White actually entered the bedroom, closed the door, put a knee on the bed, unzipped his pants, took out his penis, presented it to A.C., grabbed A.C.'s buttocks, and leaned to within six inches of A.C. with his penis exposed. Then White told A.C. to perform oral sex on him not once, but twice. Not all of these steps are necessary to constitute a substantial step in attempting second degree child rape but White's actions clearly evidence conduct "strongly corroborative of [his] criminal purpose." Borrero, 161 Wash.2d at 539, 167 P.3d 1106.
¶ 20 When viewed in the light most favorable to the State, White took more than one substantial step toward second degree child rape. Thus, the State's evidence was sufficient to convict White of attempted second degree child rape.
¶ 21 We affirm.
¶ 22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
¶ 38 We affirm.
We concur: ARMSTRONG and HUNT, JJ.
NOTES
[1] Additionally, White contends that the trial court erred by denying his motion to suppress his custodial statements to police while intoxicated. We address this argument in the unpublished portion of our opinion.
[2] We refer to minor victims by their initials to protect their rights under RCW 7.69A.030(4).
[3] The record does not contain the last name of Vinnie or the name of his son.
[4] The record is unclear whether Vinnie remained in the house but A.C. testified, "I don't think anybody else was home." 5 RP at 138.
[5] The record does not contain Deputy Reigle's first name.
[6] Mendoza's version of White's arrest differed from Sekora's. Mendoza testified that A.C. walked with him back to his house and that three or four police officers entered the house. Sekora testified that she drove A.C. to Mendoza's house and that she and Deputy Reigle were the only officers present. But Mendoza also testified that he took daily medication following his stay at Western State Hospital and that he forgot to take his medication on the day he testified. Furthermore, he admitted to having a poor memory.
[7] Mendoza testified that White was "passing in and out every time [Sekora] said his name, and they shook him, and so they, like, got him up." 5 RP at 201. "[White] just looked like he was dizzy and falling asleep." RP at 202.
[8] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[9] White did not confess to attempted sexual contact with A.C. In fact, he denied knowing A.C. This reference in the brief appears to be a misstatement of his claim that the trial court erred in admitting his custodial statements.
[10] A.C. is not married to White.
[11] "`Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).
[12] White's analogy involves consenting adults without touching, positioning, or exposing genitals, unlike the facts here. Furthermore, the man at the bus stop does not confine his victim or demand sexual gratification.