# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76457-8-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KEVIN DALE BEST, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: April 23, 2018 |
| | ) | |

2018 APR 23 AM 9:48

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

BECKER, J. — Undercover police agents posted a personal advertisement implicitly offering illegal sexual contact with three children. The defendant responded to the advertisement and communicated his intent to accept the offer. The defendant then showed up at the address given and was arrested. Charged with three counts of attempted rape and molestation, the defendant successfully moved for dismissal under State v. Knapstad, 107 Wn.2d 346, 729 P.2d 48 (1986). The basis for the dismissal was that the State had not presented evidence of a substantial step. Because a jury could find that the defendant's conduct went beyond mere preparation to show a clear design to commit the criminal acts, we reverse and remand for trial.

Respondent Kevin Best came to the attention of law enforcement officers in December 2015 when he responded to an ad they had posted on an online

platform for classified advertising. The ad, posted by an individual named "Kristi," sought a "daddy to take care of her girls." Kristi was in reality a police officer working in a sting operation. She posed as the mother of two girls, ages 11 and 8, and a son age 13. Best and Kristi exchanged sexually explicit e-mails, text messages and phone calls over a period of two months. Best repeatedly expressed a desire to have sexual contact with each of Kristi's children. He described the anticipated sexual activity in graphic detail. He also described having sexual relations with his own two daughters. In a phone conversation with an agent who was pretending to be "Lisa," Kristi's 11-year-old daughter, Best talked about having sexual intercourse with her and said, "Don't worry, I'll show some attention to your younger sister too." After this conversation, Best sent Kristi a video of himself masturbating and ejaculating.

Kristi and Best discussed ground rules for sexual activity involving the children: Best wanted no "aggression" to be used with his daughters, and Kristi said her rules were "no pain, no anal, condoms." They eventually arranged that Best, without his daughters, would come to Kristi's home in Everett on February 20, 2016, a Saturday. The plan was that he would spend the weekend. Best asked if Kristi allowed her girls to have drinks for play nights. Kristi responded no, but she said gifts would help to "soften them up." Best talked about taking the children shopping when he came over.

On the arranged date, Best drove to Kristi's home with his dog. On the way, at Kristi's request, he stopped to buy an iced coffee for Kristi and three chocolate milks for the children. When he was almost there, he messaged Kristi

2

to ask if Lisa would meet him at the door. Kristi responded that Lisa was sleeping, and she suggested that Best could wake her up and then "you guys can get it together if that works." Best replied, "Cool."

Best was arrested when he arrived. The State charged him with attempted first degree rape of the older sister, attempted first degree child molestation of the younger sister, and attempted second degree rape of the boy.

Best moved to dismiss under Knapstad. The trial court granted the motion and dismissed the charges without prejudice. The State appeals.

An order dismissing charges on a Knapstad motion is reviewed de novo. State v. Conte, 159 Wn.2d 797, 803, 154 P.3d 194, cert. denied, 552 U.S. 992 (2007).

Under Knapstad, a trial court has inherent authority to dismiss a charge when the undisputed facts are insufficient to support a verdict of guilt. Knapstad, 107 Wn.2d at 353. The threshold showing required to survive a Knapstad motion to dismiss is lower than that required for a conviction. State v. Montano, 169 Wn.2d 872, 879, 239 P.3d 360 (2010). When considering a Knapstad motion, the court must determine "whether the facts which the State relies upon, as a matter of law, establish a prima facie case of guilt." Knapstad, 107 Wn.2d at 356-57. If so, denial of the motion to dismiss is mandatory. Knapstad, 107 Wn.2d at 356. "When evaluating a Knapstad challenge to the sufficiency of the evidence, the trial court considers the evidence and reasonable inferences therefrom in the light most favorable to the State." State v. Graham, 182 Wn. App. 180, 183, 327 P.3d 717 (2014).

3

Best was charged with attempt crimes. "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). A substantial step "need not be an overt act, as long as it is behavior strongly corroborative of the actor's criminal purpose." State v. Harris, 121 Wn.2d 317, 321, 849 P.2d 1216 (1993). The conduct must go beyond mere preparation. State v. Townsend, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). "The question of what constitutes a 'substantial step' under the particular facts of the case is clearly for the trier of fact." State v. Workman, 90 Wn.2d 443, 449, 584 P.2d 382 (1978). "When preparation ends and an attempt begins, we have held, always depends on the facts of the particular case." Workman, 90 Wn.2d at 449-50. "Any slight act done in furtherance of a crime constitutes an attempt if it clearly shows the design of the individual to commit the crime." State v. Price, 103 Wn. App. 845, 852, 14 P.3d 841 (2000), review denied, 143 Wn.2d 1014 (2001).

The trial court determined that the evidence sufficiently showed Best had the intent to commit the specific crimes charged but was insufficient to show that he took a substantial step:

> The court reviewed all of the proffered facts in a light most favorable to the state. The materials support the state's view that the defendant communicated in detailed and graphic ways a history of exploiting his own children and his intent to commit or facilitate various sexually exploitative crimes involving the children of the fictitious mother. Thus, the defendant's intent is not at issue in this Knapstad motion. The unanswered legal question is whether the defendant took a substantial step toward the commission of any of the charged crimes. I conclude that the defendant's act of driving to the fictitious mother's home and bringing beverages for each

4

member of the fictitious mother's family is insufficient as a matter of law to conclude that the defendant took a substantial step toward the commission of any of the charged crimes.

Washington courts have affirmed convictions for attempted sex crimes with children in several similar cases in which, because the arrest of the defendant occurred as the result of an undercover sting operation, the defendant did not come into physical proximity with an actual child. In each case, we rejected the argument that the defendant had not taken a substantial step. In each case, like here, the defendant arrived at a motel or other prearranged meeting place after clearly expressing his desire to have sex with the child. Townsend, 147 Wn.2d at 671; State v. Sivins, 138 Wn. App. 52, 56-58, 155 P.3d 982 (2007); State v. Wilson, 158 Wn. App. 305, 308-11, 242 P.3d 19 (2010).

Here, the trial court characterized Townsend, Sivins, and Wilson as having evidence that the defendant "was prepared and ready to engage in sexual contact with a minor." The court found these cases distinguishable on the basis that showing up at the designated address bringing coffee and chocolate milk "does not clearly show the design of the defendant to commit the crimes with which he is charged."

Townsend, Sivins, and Wilson affirm convictions; they do not purport to set forth a bright line for the specific facts necessary to show a substantial step as opposed to mere preparation. Best contends something more is required than merely coming to a prearranged meeting location. He cites no authority to indicate that coming to a prearranged meeting location is insufficient as a matter of law. To the contrary, this court has given the following as an example of

conduct amounting to a substantial step toward statutory rape: "The actor might lie in wait on the known route of a particular child after the actor has told another that he wants to have sexual intercourse with that child." State v. Falco, 59 Wn. App. 354, 359, 796 P.2d 796 (1990).

Nor is it essential to prove overt sexual conduct in the child's presence. In proving a charge of an attempt at committing a sex crime against a minor, "the critical focus is on the defendant's criminal intent and not on the fact that no minors were actually subjected to sexual exploitation or abuse." State v. Luther, 157 Wn.2d 63, 74, 134 P.3d 205, cert. denied, 549 U.S. 978 (2006). A reasonable jury "may infer the elements of attempt even without evidence of physical contact or an express statement of intent." State v. Leslie Wilson, 1 Wn. App. 2d 73, 85, 404 P.3d 76 (2017).

Best contends he never admitted, agreed, or even suggested that he intended to engage in sexual conduct with the children at their first meeting. He emphasizes a communication with Kristi in which he stated that he had "no expectations" for the visit. But Kristi responded, "I do have some expectations or I wouldn't be talking . . . to you," to which Best replied, "Haha I feel the same." Considering the record as a whole in the light most favorable to the State, it is reasonable to infer that Best included the "no expectations" statement to shield himself from criminal liability if Kristi turned out to be a law enforcement agent. Similarly, Best's assertion in an e-mail that "I never play when we meet for the first time to be safe" does not have to be taken at face value.

Best suggests that his communications with Kristi were merely fantasy. He sent a message to Kristi that "texting is all fantasy so we can say whatever we want." One of his messages stated, "I like to say everything is a fantasy until I know you're real." In an early message, he told her "until we trust each other for now this is all fantasy and not real:-) what all are you into?" But Kristi responded, "Well I'm not into fantasy," and Best replied, "Yeah me either." Best told Kristi on several occasions that he suspected a sting operation. It is reasonable to infer that Best's references to fantasy were self-serving and disingenuous and that his true intent was to have sexual contact with Kristi's children after using gifts to "soften them up."

Best cites State v. Grundy, 76 Wn. App. 335, 886 P.2d 208 (1994). In Grundy, an undercover officer posing as a drug runner approached the defendant and asked him what he wanted. Grundy, 76 Wn. App. at 336. The defendant was arrested when he expressed a desire to buy cocaine. Grundy, 76 Wn. App. at 336. He was convicted of attempted possession of cocaine. Grundy, 76 Wn. App. at 336. This court reversed, finding insufficient evidence of a substantial step. Grundy, 76 Wn. App. at 338. "The parties were still in the negotiation stage." Grundy, 76 Wn. App. at 338. Best contends he and Kristi similarly were only at "the negotiation stage" about whether the sexual conduct would occur. Grundy is not analogous. Best spent weeks getting to know Kristi. Once he decided to trust that she genuinely shared his desire for sex with children, he joined her in planning a family style weekend during which she would allow him to exploit her children.

The sexually explicit e-mails, text messages, and telephone calls presented by the State make out a prima facie case that Best specifically intended to have sexual intercourse with the older daughter, to molest the younger daughter, and to cause the 13-year-old son to have sex with "everyone." When all inferences are taken in favor of the State, there is evidence of more than mere preparation. Best's arrival on Kristi's doorstep, exactly at the time and place the two of them had agreed on, is evidence clearly showing his design to carry out their plan for a weekend involving sexual contact with the three children.

The trial court erred by granting the Knapstad motion. The order of dismissal is reversed, the charges are to be reinstated, and the case is remanded for further proceedings.

Becker, J.

WE CONCUR:

Mann, A.C.J.

Cox, J.