# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49178-8-II |
| Respondent, | |
| v. | |
| LENDIN SAITI, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Lendin Saiti appeals his convictions and sentence for unlawful possession of a controlled substance (PCS), theft of a motor vehicle with two aggravating circumstances (position of trust and invasion of privacy), unlawful possession of a firearm in the first degree, and use of drug paraphernalia.

We conclude that sufficient evidence supports each conviction, no right to confrontation violation occurred, and the trial court properly calculated the offender score and sentenced Saiti on all charges. We do not consider whether sufficient evidence supports the aggravating circumstances. We affirm.

## FACTS

Patty Lopez initially met Saiti through Facebook. At the time, Saiti lived in California. They began a romantic relationship in July 2015. Saiti moved to Washington and lived with Lopez "[o]ff and on." Report of Proceedings (RP) (May 24, 2016) at 48. Saiti did not have his own car; Lopez often allowed him to use her car.

During their relationship, Lopez purchased a firearm and showed it to Saiti. In Saiti's presence, she put the gun in her purse. She kept it there at all times, but would move the gun from purse to purse when changing purses.

Lopez lived above the restaurant where she worked. Saiti often came into the restaurant throughout the day.

On December 20, as Lopez was getting ready for work, Saiti asked Lopez for money. Lopez refused to give him money because she did not want him to buy drugs. Previously, Lopez had given Saiti money for drugs.

Lopez exited her apartment and went to work. Lopez took her purse and put it in the kitchen. The kitchen was restricted to employees only. Her purse contained her car keys, cash, and her gun, among other items.

Amy Leback, Lopez's coworker, knew Saiti was Lopez's boyfriend. Leback saw Saiti come into the restaurant. Saiti went into the kitchen and again asked Lopez for money. She again refused. Saiti left, looking frustrated and mad.

Leback left the kitchen and saw Saiti quickly leaving the restaurant out the back door. He had Lopez's purse. Lopez walked down the hall and saw her car leaving the parking lot. Lopez ran back to the kitchen to check on her purse, but found it missing. Lopez yelled to Leback to call the police because Saiti drove off in her car with her purse.[1] Leback called the police.

---

[1] Lopez later testified that Saiti did not ask Lopez for permission to use the car, but if he had, she stated that she would have allowed him to borrow the car. However, she did not give him permission to take the car.

Pacific County Sheriff's Deputy Samuel Schouten saw Lopez's car at an RV park. Schouten saw Saiti walk away from the car and enter a trailer. The police went to the trailer and arrested Saiti after he exited it.

Long Beach Police Officer Rodney Nawn searched Saiti and the vehicle after his arrest. Nawn discovered a rubber container containing heroin in Saiti's pocket. The police found Lopez's purse with the gun inside on the front seat of her car. The police did not recover the money.

The State charged Saiti with possession of heroin with a deadly weapon, theft of a motor vehicle, theft of a firearm, unlawful possession of a firearm in the first degree, and possession/use of drug paraphernalia.[2] The theft charges each had two aggravating factors charged: that Saiti used his position of trust, confidence, or fiduciary responsibility to facilitate the commission of the offense, and that the offense involved an invasion of Lopez's privacy.[3]

Before trial, the State filed a motion to depose Lopez who refused to return phone calls or make herself available for an interview. The trial court granted the motion. After Lopez failed to appear for her deposition, the State moved for a material witness warrant and the court issued one.

Lopez appeared at trial. After some questions, the State informed the court that Lopez was not testifying as she had during her interview the previous day. The trial court had a colloquy with Lopez and discussed the meaning of perjury with her.

The State asked to treat Lopez as a hostile witness. The State stated that "the statements she's saying today are sworn under penalty of perjury. If there were untruthful statements, that

---

[2] RCW 69.50.4013; RCW 9A.56.065; RCW 9A.56.020(1)(a); RCW 9A.56.300; RCW 9.41.040(1)(a); RCW 69.50.412(1).

[3] RCW 9.94A.535(3)(n) & (p).

3

would be grounds for perjury. To prove whether or not it's perjury, we have several statements." RP (May 24, 2016) at 55.

Saiti responded that Lopez's failure to remember did not amount to hostility. Saiti said that Lopez has "just been told that if you don't start responding the way you did yesterday, then, you know, we're going to charge you with [perjury]." RP (May 24, 2016) at 58. The trial court denied the motion and reiterated that Lopez needed to testify truthfully.

Saiti sought to elicit testimony about Lopez's material witness warrant. He argued that the evidence was relevant to bias, prejudice, and credibility. The trial court denied the motion.

The jury found Saiti guilty of all charges except theft of a firearm.[4] By special verdict, the jury found both aggravating factors on the theft of a motor vehicle charge.

The trial court sentenced Saiti to a total of 67 months of confinement and 12 months of community custody. In calculating Saiti's offender score, the trial court included one point for an attempted grand theft conviction from California.[5] After reviewing documentation the State provided, the court found that the conviction was comparable to a Washington felony, to-wit attempted theft in the first degree. Saiti appeals.

ANALYSIS

I.    SUFFICIENT EVIDENCE

Saiti argues insufficient evidence supports his convictions for unlawful possession, theft of a motor vehicle, and the two aggravating circumstances. He argues that the State failed to prove

---

[4] On the possession of heroin charge, the jury did not find that Saiti was armed with a deadly weapon.

[5] Cal. Penal Code §§ 487(c) & 664.

4

that he knew Lopez's purse contained her gun. Saiti also argues insufficient evidence showed that he intended to deprive Lopez of her car.

We conclude that sufficient evidence supports Saiti's convictions. We do not consider whether sufficient evidence supports the two aggravating circumstances.

A. STANDARD OF REVIEW

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Circumstantial evidence is equally as reliable as direct evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

In claiming insufficient evidence, "the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Homan*, 181 Wn.2d at 106 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). In addition, we "must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." *Homan*, 181 Wn.2d at 106.

B. UNLAWFUL POSSESSION OF A FIREARM

A person "is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . of any serious offense as defined in this chapter." RCW

9.41.040(1)(a). The State must prove that the defendant knowingly owned, possessed, or controlled the firearm. *State v. Williams*, 158 Wn.2d 904, 909, 148 P.3d 993 (2006).

Saiti stipulated at trial that he had previously been convicted of a serious offense. He argues that insufficient evidence exists to show he knowingly possessed or controlled a firearm.

Actual possession occurs when a defendant has physical custody of the item, and constructive possession occurs if the defendant has dominion and control over the item. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Constructive possession is established when "the defendant was in dominion and control of either the drugs or the premises on which the drugs were found." *State v. Callahan*, 77 Wn.2d 27, 30-31, 459 P.2d 400 (1969). To determine whether a defendant had constructive possession of a firearm, we examine the totality of the circumstances touching on dominion and control. *State v. Jeffrey*, 77 Wn. App. 222, 227, 889 P.2d 956 (1995).

"A person knows or acts knowingly or with knowledge when: (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense." RCW 9A.08.010(1)(b)(i). As the jury instructions in this case explain, "[i]f a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact." CP at 99 (Instr. 27).

The evidence shows that Lopez showed Saiti her gun when she purchased it. She placed the gun in her purse in Saiti's presence. Lopez always kept the gun in her purse. She moved the gun into different purses when changing them. Saiti took the same purse he had originally seen Lopez place the gun into. He placed the purse on the front seat and drove away in her car. The gun was easily accessible. A reasonable juror could find beyond a reasonable doubt that Saiti had knowledge of the gun's presence and that he knowingly possessed it.

6

Saiti analogizes his case to *State v. Davis*, 176 Wn. App. 849, 315 P.3d 1105 (2013) *rev'd on other grounds by* 182 Wn.2d 222, 340 P.3d 820 (2014).  However, the issue in *Davis* involved whether the defendant had dominion and control over the car in which the gun was present.  176 Wn. App. at 868.  The defendant did not argue he lacked knowledge about the gun's presence.

Therefore, we conclude that sufficient evidence supports Saiti's conviction of unlawful possession of a firearm.

C.      THEFT OF A MOTOR VEHICLE

Saiti argues that the State failed to present evidence that he intended to deprive Lopez of her car.  In addition, Saiti argues that the State failed to prove that he exerted unauthorized control over the vehicle.

The State had to prove that Saiti wrongfully obtained or exerted unauthorized control over another's motor vehicle, and that he intended to deprive that person of the motor vehicle.  RCW 9A.56.020(1)(a); RCW 9A.56.065(1).  The jury instructions explained that "[t]heft means to wrongfully obtain or exert unauthorized control over the property or services of another, or the value thereof, with intent to deprive that person of such property or services."  CP at 85 (Instr. 13) and that "[a] person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime."  CP at 110 (Instr. 35).

"[T]he specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability."  *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).  Moreover, when analyzing intent in a theft case, intent to permanently deprive is not required.  *State v. Crittenden*, 146 Wn. App. 361, 369-70, 189 P.3d 849 (2008).  A person who exceeds the permissive authority to use a vehicle wrongfully obtains that vehicle and may be convicted of theft.  *State v. Clark*, 96 Wn.2d 686, 691, 638 P.2d 572 (1982).

Here, Saiti took Lopez's purse and car keys, and drove off in her vehicle. There is no evidence that he had permission to use the vehicle on the date in question, regardless of the fact that he regularly used Lopez's vehicle without asking permission. Lopez called law enforcement because she wanted her car back. This evidence, along with Lopez telling Leback to call the police, demonstrated that even if Saiti had permission to use her vehicle on some occasions, a rational jury could conclude that he exceeded the scope of that permission when he took her vehicle after Lopez refused to give him money. Thus, sufficient evidence supports Saiti's conviction for theft of a motor vehicle.

D.    AGGRAVATING CIRCUMSTANCES

This issue is moot because the trial court did not impose an exceptional sentence based on the aggravating factors. Accordingly, we do not consider the issue further.

"As a general rule, we do not consider questions that are moot." *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). "A case is technically moot if the court can no longer provide effective relief." *Hunley*, 175 Wn.2d at 907. However, we will review an appeal if the sentence has collateral effects. *State v. Rinaldo*, 98 Wn.2d 419, 422, 655 P.2d 1141 (1982).

Because the trial court did not impose an exceptional sentence, the jury's special verdict on the aggravating circumstances is moot.

II.    CONFRONTATION CLAUSE VIOLATION

Saiti argues that the trial court violated his confrontation clause right when it denied Saiti's motion to introduce evidence of Lopez's material witness warrant because it was relevant for the jury's credibility assessment of Lopez. Because the court did not err in excluding the evidence, we disagree.

A. LEGAL PRINCIPLES

The United States Constitution and the Washington State Constitution guarantee criminal defendants the right to confront and cross-examine witnesses. U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22. "The purpose is to test the perception, memory, and credibility of witnesses." *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). Accordingly, the right to confrontation must be zealously guarded. *Darden*, 145 Wn.2d at 620.

Yet, the right is not absolute. *Darden*, 145 Wn.2d at 621. "Courts may, within their sound discretion, deny cross-examination if the evidence sought is vague, argumentative, or speculative." *Darden*, 145 Wn.2d at 620-21. "The confrontation right and associated cross-examination are limited by general considerations of relevance." *Darden*, 145 Wn.2d at 621.

We review a trial court's ruling limiting cross-examination for a manifest abuse of discretion. *State v. Lile*, 188 Wn.2d 766, 782, 398 P.3d 1052 (2017); *Darden*, 145 Wn.2d at 619. A trial court has broad discretion regarding the admission or exclusion of evidence, and the trial court's decision will not be reversed absent a manifest abuse of discretion. *State v. Swan*, 114 Wn.2d 613, 658, 790 P.2d 610 (1990). A manifest abuse of discretion arises when "the trial court's exercise of discretion is 'manifestly unreasonable or based upon untenable grounds or reasons.'" *Darden*, 145 Wn.2d at 619 (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

B. THE TRIAL COURT DID NOT ERR

Saiti moved to introduce evidence of the material witness warrant because, he argues, it showed Lopez's bias, prejudice, or credibility as a witness. It would demonstrate that pressure from the State caused her to testify as she did.

Evidence is relevant if it has any tendency to make a disputed material fact more or less probable than it would be without the evidence. ER 401. Only minimal logical relevancy is

required. *State v. Bebb*, 44 Wn. App. 803, 814, 723 P.2d 512 (1986), *aff'd*, 108 Wn.2d 515, 740 P.2d 829 (1987). The trial court may exclude relevant evidence if the danger of unfair prejudice substantially outweighs its probative value. ER 403. The trial court has considerable discretion to consider what evidence is relevant and to balance its possible prejudicial impact against its probative value. *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014).

Here, the evidence of Lopez's material witness warrant was not relevant. As the trial court stated, Lopez did not testify that she felt pressured to testify in the way that she did. The court did not abuse its discretion by ruling that the necessity of a warrant to insure Lopez came to court was irrelevant to any disputed fact. Accordingly, we conclude that the trial court did not err by excluding the evidence of the material witness warrant and it did not violate Saiti's confrontation right.

III.    COMPARABILITY OF FOREIGN OFFENSE

Saiti argues that the trial court erred by concluding his California conviction for attempted grand theft was comparable to the Washington crime of attempted theft in the first degree. He argues that it is more appropriately comparable to theft in the third degree because his sentence reflected that of a misdemeanor and the restitution fee imposed indicated that the value of the attempted theft did not exceed $700, as required by Washington's theft in the third degree statute.

Saiti also argues that, because his California conviction is not defined as a felony or a misdemeanor, and gross misdemeanors do not exist in California, the rule of lenity should apply. We disagree with Saiti.

A.    LEGAL PRINCIPLES

We conduct de novo review of a sentencing court's decision to count a prior conviction as criminal history. *State v. Moeurn*, 170 Wn.2d 169, 172, 240 P.3d 1158 (2010).

There is a two-part test to determine the comparability of a foreign offense. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). We must first determine whether the foreign offense is legally comparable, or "whether the elements of the foreign offense are substantially similar to the elements of the Washington offense." *Thiefault*, 160 Wn.2d at 415. "If the elements of the foreign offense are broader than the Washington counterpart, the sentencing court must then determine whether the offense is factually comparable—that is, whether the conduct underlying the foreign offense would have violated the comparable Washington statute." *Thiefault*, 160 Wn.2d at 415. "In making its factual comparison, the sentencing court may rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt." *Thiefault*, 160 Wn.2d at 415. If the court determines that the "prior, foreign conviction is neither legally nor factually comparable, it may not count the conviction." *Thiefault*, 160 Wn.2d at 415.

Statutory interpretation is a question of law that we review de novo. *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002). "In interpreting statutory provisions, the primary objective is to ascertain and give effect to the intent and purpose of the Legislature in creating the statute." *Watson*, 146 Wn.2d at 954. "The court discerns legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Fast v. Kennewick Pub. Hosp. Dist.*, 187 Wn.2d 27, 33, 384 P.3d 232 (2016).

11

B.      THE TRIAL COURT CORRECTLY DETERMINED CRIMINAL HISTORY

First, we must determine whether the statutes at issue are legally comparable. *Thiefault*, 160 Wn.2d at 415.

Saiti's conviction for attempted grand theft is based upon a violation of California Penal Code §§ 664 and §487(c). The former is California's attempt statute. Cal. Penal Code § 664 (2006). The latter provides, "[g]rand theft is theft committed in any of the following cases: . . . When the property is taken from the person of another." Cal. Penal Code § 487(c) (2009).

Washington's statute for theft in the first degree states, "(1) [A] person is guilty of theft in the first degree if he or she commits theft of: . . . Property of any value, other than a firearm as defined in RCW 9.41.010 or a motor vehicle, taken from the person of another." RCW 9A.56.030(1)(b).

Both statutes contain unambiguous language and criminalize theft of property from the person of another. Cal. Penal Code § 487(c) (2009); RCW 9A.56.030(1)(b). Although the lesser degrees of theft and other prongs of theft in the first degree in Washington have monetary requirements as elements, RCW 9A.56.030(1)(b) does not. *See* RCW 9A.56.040; RCW 9A.56.050. The plain language of grand theft and theft in the first degree are the same. Cal. Penal Code § 487(c) (2009); RCW 9A.56.030(1)(b). Accordingly, we conclude that the statutes are legally comparable.

We next consider whether the crime committed in California is factually comparable to a felony crime in Washington. "Factual comparability requires the sentencing court to determine whether the defendant's conduct, as evidenced by the indictment or information, or the records of the foreign conviction, would have violated the comparable Washington statute." *State v.*

*Farnsworth*, 133 Wn. App. 1, 18, 130 P.3d 389 (2006) *remanded*, 159 Wn.2d 1004, 151 P.3d 976 (2007) (internal citations omitted).

The record does not contain any clear facts to allow for a full factual comparability analysis. The record only contains the judgment and sentence. The record does not contain the charging document. The judgment includes a restitution amount of $200. Saiti argues that because the restitution amount in the judgment was $200, it must be a misdemeanor. However, the judgment is also clear that Saiti was charged under California Penal Code § 487(c) (2009), which involves the theft of property of any value from a person, similar to RCW 9A.56.030(1)(b).

One prong of Washington's theft in the first degree statute similarly does not have a monetary requirement. RCW 9A.56.030(1)(b). Therefore, if Saiti committed grand theft as proscribed by the California statute, the facts required by the statute (that he took property from another person) would have also violated Washington's theft in the first degree statute.

Therefore, the trial court did not err by including Saiti's California conviction as criminal history.

IV.     CONCURRENT STATUTES

Saiti argues that his conviction of unlawful possession of heroin and unlawful use of drug paraphernalia are concurrent crimes and the trial court should have dismissed the possession of a controlled substance charge. He argues that because the object in question was a legal object and became drug paraphernalia only because of the presence of a controlled substance, the statutes are necessarily concurrent. We disagree with Saiti.

A.     LEGAL PRINCIPLES

We review the question of whether two statutes are concurrent de novo. *State v. Wilson*, 158 Wn. App. 305, 314, 242 P.3d 19 (2010).

"When a specific statute and a general statute punish the same conduct, the statutes are concurrent and the State can charge a defendant only under the specific statute." *Wilson*, 158 Wn. App. at 313-14. "This rule gives effect to legislative intent and ensures charging decisions comport with that intent." *Wilson*, 158 Wn. App. at 314.

However, if a person can violate the specific statute without violating the general statute, the statutes are not concurrent. *State v. Heffner*, 126 Wn. App. 803, 808, 110 P.3d 219 (2005). "Statutes are concurrent only when every violation of the specific statute would result in a violation of the general statute." *Wilson*, 158 Wn. App. at 314.

In determining whether two statutes are concurrent, we examine the elements of each of the statutes to ascertain whether a person can violate the specific statute without necessarily violating the general statute. *Heffner*, 126 Wn. App. at 808. "Statutes are concurrent if all of the elements to convict under the general statute are also elements that must be proved for conviction under the specific statute." *Wilson*, 158 Wn. App. at 314. The facts of the particular case need not be examined, we examine only the elements of the statutes. *Wilson*, 158 Wn. App. at 314.

B.     THE STATUTES ARE NOT CONCURRENT

Saiti claims that the rubber container became drug paraphernalia only because it contained heroin residue, and thus, the convictions are inseparable. However, we do not examine the facts of the particular case, we only examine the statutory elements. *Wilson*, 158 Wn. App. at 314.

RCW 69.50.412(1) states that:

It is unlawful for any person to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance other than marijuana. Any person who violates this subsection is guilty of a misdemeanor.

RCW 69.50.4013(1) provides that it is "unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter." A person that violates this statute is guilty of a class C felony. RCW 69.50.4013(2).

In *State v. Williams*, 62 Wn. App. 748, 754, 815 P.2d 825 (1991), the court held that the drug paraphernalia statute and the possession of controlled substances statute were not concurrent statutes. In its reasoning, the court described an example where the defendant could admit to recently attending a party where he used drug paraphernalia to inject controlled substances:

> Although no controlled substances or paraphernalia are found in the defendant's possession, his behavior and appearance may be consistent with recent controlled substance use, tests of his blood could confirm the presence of controlled substances, and recent injection marks could be found on his arm. Among other offenses, the defendant could be prosecuted for using drug paraphernalia to inject controlled substances, although it could not be established that he was in possession of either drug paraphernalia or controlled substances.
>
> There are no doubt other situations where the evidence may establish that a defendant was under the influence of controlled substances at the time of his arrest, although no paraphernalia or controlled substances are found. Nevertheless, such evidence creates an inference that drug paraphernalia was used to ingest the controlled substances.

*Williams*, 62 Wn. App. at 752-53 (footnote omitted).

Although the law has been recodified since *Williams*, the rationale remains the same.[6] Even though one statute may implicate the other because of the relation between the two, facts in a given case could support a charge for use of paraphernalia without evidence to support a charge of unlawful possession of a controlled substance. Because the elements of the statutes are not the

---

[6] *See* LAWS OF 2017, ch. 317 § 15; LAWS OF 2013, ch. 3 § 22 (most recent amendments to the possession of controlled substance and paraphernalia statutes, respectively).

same and not every violation of one statute would be a violation of the other, we conclude that the statutes are not concurrent.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, P.J.

Lee, J.