242 P.3d 19 (2010)
STATE of Washington, Respondent,
v.
Rodney Glenn WILSON, Appellant.
No. 63632-4-I.
Court of Appeals of Washington, Division 1.
November 1, 2010.
*20 Elaine L. Winters, Washington Appellate Project, Seattle, WA, for Appellant.
Dennis John McCurdy, King County Prosecutor's Office, Seattle, WA, for Respondent.
SCHINDLER, J.
¶ 1 The court convicted Wilson of attempted rape of a child in the second degree. On appeal, Wilson argues his conviction must be reversed because the State had to charge him with the more specific crime of commercial sexual abuse of a minor in violation of RCW 9.68A.100(1) instead of charging him with attempted rape of a child in the second degree in violation of RCW 9A.44.076(1). In the alternative, Wilson argues there was insufficient evidence to establish that he took a *21 substantial step toward commission of the crime of rape of a child in the second degree. Because the crime of prohibiting commercial sexual abuse of a minor in violation of RCW 9.68A.100(1) is not a statute that is concurrent with the crime of rape of a child in the second degree in violation of RCW 9A.44.076(1), and substantial evidence supports the conviction for attempted rape in the second degree, we affirm.

FACTS
¶ 2 Seattle Police Detective Trent Bergmann works in the Internet Crimes Against Children Unit.[1] On August 16, 2007, posing as a 38-year-old woman named "Jackie," Detective Bergmann posted an advertisement on Craigslist saying that she and her young daughter would fulfill a client's fantasies, "but it won't be cheap." The Craigslist advertisement states:
Would you like a Mother/Daughter combo?
Hi. I'm 38 years old and my `daughter' is much much younger. We will take great care of you and fulfill your fantasies but it won't be cheap;)
I have to pay the rent after all! Email me for more details and pics.
¶ 3 At approximately 2:00 p.m. that day, Detective Bergmann received a response to the advertisement from "Rod," using the e-mail address of rodgwilson@gmail.com. Rod said he was interested. Jackie and Rod then e-mailed each other to make arrangements to get together for the "[m]other/[d]aughter combo." Rod asked Jackie to send photographs.
Rod: I'm interested. How much for the duo? Is she really your daughter? Do you have any pics?
Bergmann: Hi babe! My name is Jackie. I'm 38 years old. I have a girl that works for me and her name is Jenny. She is 13 years old, has red hair, and is only 5 feet tall. She's a cute little thing. We can play the mother/daughter fantasy for you.
We are downtown Seattle and you'd have to come here. Price depends on what all you want to do. If still interested let me know. We are in the Queen Ann part of Seattle if you know where that is. If not I can give you directions, just let me know.
Rod: Yes I'm interested. I don't have very strange tastes, so nothing too exotic. Directions would be very helpful.
This isn't some sort of Dateline thing is it?
Bergmann: Ha ha ha. Totally not a Dateline thing. And I'm super nervous about you being a cop. I have pics of us. How do I know your not a cop?
I can have Jenny meet you at the Dick's Drive Inn [sic] at Seattle. I can look the address up for you. We live across the street in an apartment.
Price depends [on] what all you want to do . . . . more costs more:)
Rod: Sounds like fun. Do you have any pics to show me?
Rod: Dicks [sic] up on Broadway?
Rod: I work at a hospital here in Seattle.
I study sleep and wake patterns. I'm certainly no cop. How would $300 do?
¶ 4 In response, Jackie provided Rod with photographs and her address. Jackie also asked Rod whether he was interested in "oral" and "full sex."
Bergmann: Here we are[2]
Bergmann: In Queen Anne. Do you know the area or do you need me to look up the address?
Bergmann: That will probably work . . . what all do you want to do . . . condoms a must right?
Rod: Not a problem on my end . . .
Rod: I'm gonna need the address
Bergmann: 500 Queen Anne Ave N in Seattle. What all did you want to do. . . oral . . . full sex . . . position? ?
¶ 5 Rod agreed to pay $300 for oral and full sex with Jackie's daughter and asked whether "the girl [was] okay with all this."

*22 Rod: Yes, that sounds fine. The girl is okay with all this?
Bergmann: Yes, she ran away from home about a year ago and we need the money. Since your only paying $300 I want to know what all you want to do and how long you plan on staying. I don't usually have full sex . . . I'm usually the `fluffer' while Jenny has the full sex and other stuff.
What all did you want to do . . . and want to make sure that she will be safe and no pain stuff.
Rod: Oral and full sex sounds fine. I'm not into pain for anyone. BTW, your pics didn't come through.
Bergmann: I attached them again, let me know if they don't go through. Do you have Yahoo Instant Messenger to chat on?
¶ 6 Rod then e-mailed Jackie to say that he was on his way. Jackie asked Rod to send a picture of himself.
Bergmann: [S]o what's going on?
Rod: Enroute to you
Bergmann: Whoa dude what time will you be here? What do you look like so I can find you.
Rod: What time would you like me there. I'm a large white guy in a little black car.
Bergmann: Ha ha ha . . . . that's like everyone in Seattle. I'm not going to bang on everyone's car window. Do you have a pic I sent you one. If you're scared to send a pic then what are you wearing. . . . what kind of car. . . .?
¶ 7 At approximately 4:00 p.m., Detective Bergmann received a photo of a Caucasian male in a car with the rear window and a sunroof in the background. Shortly thereafter, Rod e-mailed Jackie to say he was waiting in the parking lot of Dick's Drive-In in a "black Nissan 200sx."
Bergmann: [O]kay got it . . . .what time do you think you will be here . . . my apartment is across the street from Dick's. I can actually see the parking lot from my window and will look for you.
Rod: I'm actually here already.
¶ 8 In response, Jackie told Rod she wasn't ready and he needed to wait.
Bergmann: [S]hit dude im not even dressed . . . . gimmie 20 min . . . . the house looks like total crap . . . . fuck im yelling at jenny to get dressed . . . . . im looking out the window I dont see ur car. . . .what kind of car is it . . . are u in the parking lot?
Rod: I'm in a black Nissan 200sx. Don't worry about getting dressed or straightening up. You just gonna get undressed again anyway. My time is a little limited
¶ 9 At 4:16 p.m., Rod sent his final e-mail message to Jackie asking her, "[a]re you there?" Detective Bergmann and three other police officers arrived at the Dick's Drive-In on Queen Anne at 4:17 p.m. Detective Bergmann saw a man sitting in a black Nissan in the parking lot who looked like the man in the photograph. The officers arrested the driver Rodney Wilson. Wilson had $330 in cash in his pocket. Wilson's iPhone was sitting in the front passenger seat.
¶ 10 The police advised Wilson of his Miranda rights.[3] Wilson waived his rights and told Detective Bergmann that he "was going to have full sex and oral sex with the 13-year-old that was going to cost $300."[4] Wilson also signed a statement admitting that he used his e-mail account to arrange to have sex with a 38-year-old woman and a girl. In the statement, Wilson admits that:
Today, August 16th of 2007, I was arrested by Seattle Police Officers at the Dick's Drive Inn [sic] in Seattle. I had answered an advertisement on Craigslist for sex. I used my email address of rodgwilson@ gmail.com. I arranged to have sex with a mom and daughter. I was told the daughter was 13 years old. This is the first time I was going to have sex with a juvenile. I was going to pay $300 dollars. I feel bad I did this. I will never do it again.
*23 ¶ 11 The State charged Wilson with attempted rape of a child in the second degree. The information alleged that Wilson, "being at least 36 months older than J.L., (a fictitious 13-year-old girl) had attempted to have sexual intercourse with J.L.," and that Wilson committed an act that was a substantial step toward commission of the crime of rape of a child in the second degree. Wilson waived his right to a jury trial.
¶ 12 Detective Bergmann, the police officer who examined the contents of Wilson's iPhone, as well as the police officers who assisted in arresting Wilson, testified at trial on behalf of the State. Wilson testified for the defense. Wilson admitted that while he was at work at the sleep disorder laboratory on August 16, 2007, he responded to an "intriguing" advertisement on Craigslist. Wilson also admitted that he e-mailed and exchanged photographs with Jackie using his iPhone. However, Wilson maintained that he did not intend to either meet or have sex with a 13-year-old. Wilson claimed the e-mail exchange was "just a conversation back and forth."
¶ 13 Wilson explained that he left work in Issaquah and drove to Seattle because he had a 4:30 p.m. meeting at a restaurant on the waterfront in downtown Seattle. Wilson said that because he arrived an hour early, he drove to Dick's Drive-In on Queen Anne. Wilson testified that he thought that Dick's Drive-In was a good location to wait because it was convenient to the waterfront and he had not had lunch yet. But Wilson admitted that he did not eat lunch while he was there. Wilson said he was just about to leave for his meeting when he was arrested.
¶ 14 Wilson testified that it was just a "coincidence" that he happened to have $300 in cash on him. Wilson claimed that he agreed to sign the statement so he could "get back on with [his] life."
¶ 15 The trial court rejected Wilson's testimony as not credible. The court found Wilson guilty of attempted rape of a child in the second degree.
The court finds the defendant's decision to go to the prearranged meeting place to be clear evidence of the defendant's intent, and does not find credible a claim that he confessed merely to cooperate.
¶ 16 The court imposed a low end standard range sentence.

ANALYSIS

Failure to Charge under a Specific Statute
¶ 17 Wilson contends we must reverse his conviction because the State could only charge him with the more specific crime of commercial sexual abuse of a minor in violation of RCW 9A.68A.100(1), instead of rape of child in the second degree in violation of RCW 9A.44.076(1).
¶ 18 Preliminarily, the State asserts that because Wilson raises this issue for the first time on appeal, he has waived his right to challenge the charging decision. Because the record shows that Wilson raised this argument below, we disagree.
¶ 19 At the close of the evidence, but before closing argument, Wilson's attorney argued that "[i]f you have a general crime and there's a specific crime, the law requires charging the specific." The attorney also told the court that there is a "statute about promoting commercial sex that involves kids" and that where a specific statute exists, "there's an obligation to charge those statutes versus some umbrella, you know, catch-all." The court and the attorneys then engaged in some discussion about whether to submit additional briefing on the issue. The court ultimately decided to not require additional briefing and rejected Wilson's argument.
¶ 20 On this record, Wilson preserved the argument that the State improperly charged him with attempted rape of a child in the second degree rather than under the more specific crime of commercial sexual abuse of a minor.
¶ 21 When a specific statute and a general statute punish the same conduct, the statutes are concurrent and the State can only charge a defendant under the specific statute. State v. Shriner, 101 Wash.2d 576, 580, 681 P.2d 237 (1984); State v. Presba, 131 Wash.App. 47, 52, 126 P.3d 1280 (2005). This rule gives effect to legislative intent and ensures *24 charging decisions comport with that intent. State v. Conte, 159 Wash.2d 797, 803, 154 P.3d 194 (2007); State v. Greco, 57 Wash. App. 196, 204, 787 P.2d 940 (1990); State v. Danforth, 97 Wash.2d 255, 258, 643 P.2d 882 (1982). We review the question of whether two statutes are concurrent de novo. State v. Chase, 134 Wash.App. 792, 800, 142 P.3d 630 (2006).
¶ 22 If a person can violate the specific statute without violating the general statute, the statutes are not concurrent. State v. Heffner, 126 Wash.App. 803, 808, 110 P.3d 219 (2005). Statutes are only concurrent when every violation of the specific statute would result in a violation of the general statute. Chase, 134 Wash.App. at 800, 142 P.3d 630.
¶ 23 In determining whether two statutes are concurrent, we examine the elements of each of the statutes to ascertain whether a person can violate the specific statute without necessarily violating the general statute. Heffner, 126 Wash.App. at 808, 110 P.3d 219. Statutes are concurrent if all of the elements to convict under the general statute are also elements that must be proved for conviction under the specific statute. Presba, 131 Wash.App. at 52, 126 P.3d 1280. Whether statutes are concurrent involves examination of the elements of the statutes, not the facts of the particular case. Chase, 134 Wash.App. at 802-03, 142 P.3d 630.
¶ 24 The crime of commercial sexual abuse of a minor under RCW 9.68A.100 is defined, in pertinent part, as follows:
(1) A person is guilty of commercial sexual abuse of a minor if:
(a) He or she pays a fee to a minor or a third person as compensation for a minor having engaged in sexual conduct with him or her;
(b) He or she pays or agrees to pay a fee to a minor or a third person pursuant to an understanding that in return therefore such minor will engage in sexual conduct with him or her; or
(c) He or she solicits, offers, or requests to engage in sexual conduct with a minor in return for a fee.
¶ 25 For purposes of the offense of commercial sexual abuse of a minor, a "`[m]inor'" is defined as "any person under eighteen years of age." RCW 9.68A.011(4). By contrast, RCW 9A.44.076(1) defines the crime of rape of a child in the second degree as follows:
A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.
¶ 26 Wilson claims the statutes are concurrent because "every time a person pays or agrees to pay for sexual contact with a minor, he is also guilty of attempted rape of a child." Because a person can commit commercial sexual abuse of a minor without committing rape of a child in the second degree, we disagree with Wilson's argument.
¶ 27 For instance, the rape of a child in the second degree statute prohibits "sexual intercourse," whereas the commercial sexual abuse of a minor statute prohibits paying for "sexual conduct."
¶ 28 "`Sexual intercourse'" for purposes of the rape of a child statute is defined as "any penetration, however slight," and "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another." RCW 9A.44.010(1). By contrast, "`sexual conduct'" in the commercial sexual abuse of a minor statute encompasses both sexual intercourse and "sexual contact," which is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9.68A.100(4); RCW 9A.44.010(2). Accordingly, a person can violate the commercial sexual abuse of a minor statute by paying for sexual contact that does not fall within the definition of "sexual intercourse" and in violation of the rape of a child in the second degree statute.[5]
*25 ¶ 29 Because every violation of the commercial sexual abuse statute would not necessarily constitute a violation of the statute prohibiting rape of a child in the second degree, the statutes are not concurrent, and Wilson was properly charged with the crime of attempted rape of a child in the second degree.

Substantial Step
¶ 30 In the alternative, Wilson claims insufficient evidence supports his conviction for attempted second degree rape of a child. Specifically, he contends that because he merely drove to a public location, never left his vehicle, nor gave Jackie any money, the evidence establishes only mere preparation and does not constitute a substantial step toward commission of the crime of rape of a child in the second degree.
¶ 31 In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Townsend, 147 Wash.2d 666, 679, 57 P.3d 255 (2002). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). A defendant claiming insufficiency of the evidence "admits the truth of the State's evidence." State v. Myers, 133 Wash.2d 26, 37, 941 P.2d 1102 (1997). It makes no difference whether the evidence is direct, circumstantial, or a combination of the two, so long as the evidence is sufficient to convince a jury of the defendant's guilt beyond a reasonable doubt. State v. Bencivenga, 137 Wash.2d 703, 711, 974 P.2d 832 (1999).
¶ 32 To convict a defendant of attempted rape of a child in the second degree, the State must prove beyond a reasonable doubt that the defendant took a substantial step toward having "sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1). A person is guilty of attempting to commit a crime if, "with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). "[T]he intent required for attempted rape of a child is the intent to accomplish the criminal result: to have sexual intercourse." State v. Chhom, 128 Wash.2d 739, 743, 911 P.2d 1014 (1996); see also Townsend, 147 Wash.2d at 679, 57 P.3d 255. Thus, the essential elements of attempted rape of a child in the second degree are: (1) the intent to have sexual intercourse, and (2) the taking of a substantial step toward the commission of that crime.
¶ 33 "Mere preparation to commit a crime is not a substantial step." Townsend, 147 Wash.2d at 679, 57 P.3d 255. In order for conduct to comprise a substantial step, it must be strongly corroborative of the defendant's criminal purpose. State v. Workman, 90 Wash.2d 443, 452, 584 P.2d 382 (1978). However, any act done in furtherance of the crime constitutes an attempt if it clearly shows the design of the defendant to commit the crime. State v. Nicholson, 77 Wash.2d 415, 420, 463 P.2d 633 (1969). Whether conduct constitutes a substantial step is a question of fact. State v. Billups, 62 Wash.App. 122, 126, 813 P.2d 149 (1991).
¶ 34 Here, Wilson engaged in an e-mail exchange with Jackie and arranged to have "oral and full sex" with a 13-year-old girl. After agreeing on the price of $300, Wilson went to the agreed upon meeting place. Consistent with the parties' plan that the 13-year-old would meet him in the parking lot of Dick's Drive-In and bring him to the apartment, he sat in his car and waited in the parking lot for approximately 30 minutes. When Wilson was arrested, he also had the amount of $300 that he agreed to pay in his pocket. And in his signed statement, Wilson admitted that he intended to have sex with a *26 13-year-old. Viewing the evidence in the light most favorable to the State, the jury could find beyond a reasonable doubt that Wilson intended to have sexual intercourse with a 13-year-old and took a substantial step toward the commission of the crime of rape of a child in the second degree.
¶ 35 Nevertheless, Wilson contends that this case is analogous to State v. Grundy, 76 Wash.App. 335, 886 P.2d 208 (1994), and as in Grundy, his conduct only amounted to negotiation. In Grundy, an undercover officer posing as a drug dealer approached Grundy and asked what he wanted. Grundy said he wanted "'20.'" The officer asked, "'20 what?'" and Grundy replied, "`20 of coke.'" Grundy, 76 Wash.App. at 336, 886 P.2d 208. The officer asked to see Grundy's money and Grundy replied that he wanted to see the drugs first. The officer then arrested Grundy. Id. Grundy was charged and convicted of attempted possession of cocaine. Id.
¶ 36 On appeal, Grundy argued there was insufficient evidence that he took a substantial step toward possession of a controlled substance. This court agreed, holding that Grundy's words, "without more" were insufficient "to constitute the requisite overt act." Grundy, 76 Wash.App. at 337, 886 P.2d 208. The court further noted that at the time of Grundy's arrest, the parties were still in the "negotiating stage." Grundy, 76 Wash.App. at 338, 886 P.2d 208.
¶ 37 Here, unlike in Grundy, the evidence established that after Wilson finished negotiating with Jackie to have oral and full sex for $300 with a 13-year-old girl, he took actions that strongly corroborated his intent to commit the crime of rape of a child in the second degree. Wilson exchanged photographs with Jackie, obtained Jackie's address, and drove to the agreed upon location, with the $300 he agreed to pay for oral and full sex with the 13-year-old girl.
¶ 38 This case is more like Townsend and Sivins. In Townsend, a police detective established an e-mail account for "`ambergirl87'" and posed as a fictitious 13-year-old girl. Townsend, 147 Wash.2d at 670, 57 P.3d 255. Townsend then began corresponding by e-mail with the detective posing as "Amber." Id. Townsend and the detective exchanged messages of a graphic sexual nature and arranged to meet at a motel room. Townsend went to the motel room at the agreed upon time, knocked on the door, and asked to see Amber. Townsend was arrested and later convicted of attempted second degree rape of a child.[6] The court affirmed Townsend's conviction, concluding that the evidence was sufficient to show he took a substantial step toward committing attempted rape of a child in the second degree. Townsend, 147 Wash.2d at 680, 57 P.3d 255.
¶ 39 The court further held that the attempt statute focuses on the actor's criminal intent rather than the impossibility of committing the crime, and concluded that "`[i]t thus makes no difference that Mr. Townsend could not have completed the crime because `Amber' did not exist. He is guilty . . . if he intended to have sexual intercourse with her.'" Townsend, 147 Wash.2d at 679, 57 P.3d 255 (quoting State v. Townsend, 105 Wash.App. 622, 631, 20 P.3d 1027 (2001)). See also State v. Luther, 157 Wash.2d 63, 74, 134 P.3d 205 (2006). (Under the attempt statute, "the critical focus is on the defendant's criminal intent and not on the fact that no minors were actually subjected to sexual exploitation or abuse.")
¶ 40 Likewise, in State v. Sivins, 138 Wash.App. 52, 155 P.3d 982 (2007), the defendant engaged in discussions of a sexual nature over the internet with a police intern whom he believed to be a 13-year-old girl. Sivins said he wanted to meet the girl and would have sex with her, if she wanted to. After promising to supply the girl with pizza and vodka, Sivins drove several hours and rented a motel room in her home town. Sivins, 138 Wash.App. at 64, 155 P.3d 982. Sivins was arrested at the motel room and convicted of attempted rape of a child in the second degree. Sivins, 138 Wash.App. at 57, 155 P.3d 982. On appeal, Sivins argued that *27 the evidence was insufficient to establish that the intended victim was 13 years old, or that he took a substantial step toward the commission of rape of a child in the second degree. Sivins, 138 Wash.App. at 63-64, 155 P.3d 982. The court concluded that the evidence supported the jury determination that Sivins believed the victim was 13 years old, that Sivins's internet communications were evidence of his intent, and that his subsequent travel and motel rental were substantial steps that corroborated his intent. Sivins, 138 Wash.App. at 64, 155 P.3d 982.
¶ 41 As in Sivins and Townsend, the evidence here was sufficient to support the jury's determination that Wilson intended to have sexual intercourse with a 13-year-old girl and that he took a substantial step toward the commission of the crime of rape of a child in the second degree.[7]
¶ 42 We affirm.
WE CONCUR: LEACH, A.C.J., and BECKER, J.
NOTES
[1] Also known as the Internet Crimes Unit.
[2] Detective Bergmann sent an attachment with this e-mail containing digitally altered photos depicting a woman and a juvenile.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Wilson also said it was the "first time he had ever done anything like this" and that he was embarrassed.
[5] The rape of a child in the second degree statute also contains a marital exemption that the commercial sexual abuse statute does not, and while the commercial sexual abuse statute prohibits paying or agreeing to pay for sexual contact with a 16 or 17-year-old, such conduct would not constitute rape of a child in any degree.
[6] The primary issue on appeal in Townsend was whether the detective violated the privacy act when he saved and printed e-mail and instant messages between Townsend and the fictitious girl. Townsend, 147 Wash.2d at 669, 57 P.3d 255. The court determined that while the e-mail and instant messages between Townsend and Amber were subject to the privacy act, Townsend impliedly consented to the recording of his private communications. Townsend, 147 Wash.2d at 675-76, 57 P.3d 255.
[7] After oral argument, Wilson filed a motion to file a supplemental assignment of error and a supplemental brief based on the supreme court's decision to take review in State v. Patel, No. 82649-8, ___ Wash. ___, ___ P.3d ___, 2010 WL 4491231 (2010). We granted the request to file a supplemental assignment of error, but denied the motion to file a supplemental brief. However, we note that it is well established that neither factual nor legal impossibility is a defense to a charge of attempt to commit a crime, and in Chhom, the supreme court held that "the intent required for attempted rape of a child is the intent to accomplish the criminal result: to have sexual intercourse." Chhom, 128 Wash.2d at 743, 911 P.2d 1014.