**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79179-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| AARON LEE KINLEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Aaron Kinley appeals his convictions for attempted rape of a child in the second degree and for communicating with a minor for immoral purposes. Kinley contends that there was insufficient evidence to convict him of attempted rape of a child, that the information omitted an essential term for the offense of communicating with a minor for immoral purposes, and that the court's exclusion of evidence prevented him from presenting a defense. We disagree, and affirm Kinley's convictions.

I.

The Washington State Patrol Missing and Exploited Children Task Force set up a sting operation in Whatcom County designed to identify people seeking sexual encounters with minors. Washington State Patrol Detective Krystal Pohl posted an

Citations and pin cites are based on the Westlaw online version of the cited material.

advertisement in the "casual encounters" section of Craigslist titled "Yung boi needs teacher." The post read:

> Im yung and i wanna learn. my friends cant no so im lookin for someone nice to help teach me. ive only done a little and wanna do more. i work out all time so im pretty cut. I really just want to play. never done this before so kinda nervous.

Kinley responded to the posting with an e-mail linked to his name and identifying himself as 26 years old. Kinley asked what Pohl was looking for. Pohl responded that he was "super hot and young" and that he wanted to try everything. The two exchanged numbers through a texting application.

Over text messages, Pohl gave her name as "Jake." Kinley responded that his name was Aaron and asked how old Jake was. Pohl responded "im 13 and hot asf lol did I send you my pic?" Pohl told Kinley that he lived in Bellingham in the Alabama Hill area. Kinley asked for pictures, and Pohl sent several pictures of a young man, including one without a shirt. The conversation continued:

> [POHL]: so what u wanna do?

> [KINLEY]: I wouldnt mind just chillin at first and go from there.

> [POHL]: my moms leaving tomorrow and will be gone all weekend so anytime after she leaves. im not really just lookin for a friend bro i have lots of friends lol.

> [KINLEY]: I get that. Lol when she leave tomorrow? When you free tomorrow?

> [POHL]: I thinks shes leaving around 3 tomorrow so anytime after that. i got someone else that might wanna hook up tomorrow to though lol.

> [KINLEY]: Cool cool. Yeah. I can pick u up tomorrow a Around alabama area im not too far from there. But i am not surpised. Someone else is interested in you [heart eye emoji]. So? I just jave to pick you up b4 they do lol.

After Kinley arranged to meet with Jake, the conversation progressed to sexual topics:

> [POHL]: Ive never tried this before so im kinda nervous and i havent done to much yet but want to try lots of stuff. what do you like to do?
>
> [KINLEY]: I know thats why i said just chill and go from there. With what your comfortable with. Start with basic. Things you know. Then move to what you are, curious about. What have you done? Or interested in trying?
>
> [POHL]: i topped[1] my cousin this summer and it was super hot. i kinda want to try bottom[2] but afraid it will hurt lol.
>
> [KINLEY]: If you go fast and not slow. Start out streaching just like with working out. Streach slowly and over time youd be ready. One step at a time. Never rush into it. Or you could.
>
> [POHL]: damn now im scared the one of the other guys i talk to says it wont hurt at all with lube.
>
> [KINLEY]: Not if your super tight. And depends especially if they are really big. Thats wjy you just start slow.

Kinley then said that he would just want to enjoy the "pleasure parts," which he said were the "things that make your eyes roll back in your head." Pohl responded "oh lol yah lets do that." Then, they discussed where to meet up:

> [KINLEY]: Well i hope your free then tomorrow lol and we can meet up lol.
>
> [POHL]: we meet somewhere? or you come here?
>
> [KINLEY]: I can pick you up. I have a car and what not. Just walk somewhere and i wont miss you! And pick u up and.

Kinley continued to inquire about Jake's sexual experiences, including asking multiple explicit sexual questions.

---

[1] Slang for anal sex.
[2] Slang for the recipient of anal sex.

On December 14, 2017, Pohl texted Kinley "u still wanna hookup later or change ur mind?" and Kinley said "Naw i can pick you up later." Pohl asked if they needed lubricant or condoms, to which Kinley replied "IDK.[3] We can always figure that out when i get to you. Guess deepened what you feeling :P lol." Pohl responded "im feeling ready dude you know what i want to do you gonna let me top you?" Kinley replied "Yeah cool. I am pretty open to anything."

Pohl told Kinley to meet him at a nearby McDonald's and Kinley told Pohl he was in a silver car. After Kinley arrived, officers arrested Kinley in his car. Officers seized a wallet containing $1,000 in cash, a cellphone, and marijuana from Kinley. Kinley was interviewed by Detective Julie Baker, and he confirmed that he had communicated with Pohl. Kinley claimed that he did not believe that Jake was a real person, or that he was actually 13. Detective Baker testified that Kinley "expressed wanting to have sex with the person that he thought he was talking to." Kinley was charged with attempted rape of a child in the second degree and with communicating with a minor for immoral purposes. Kinley proceeded to a bench trial.

Kinley moved to dismiss the charges, arguing that there was insufficient evidence to make a prima facie showing of Kinley's intent to commit attempted second degree child rape or that he took a substantial step towards committing the offense. The court denied the motion, finding that Kinley's intent was evident from the text messages and that his arrival at the McDonald's constituted as a substantial step.

At trial, Kinley testified that "casual encounters" is used for one time, casual sexual encounters. He said had been using Craigslist since he was 18. Kinley testified

---

[3] Abbreviation for I don't know.

4

that to click the link to enter the "casual encounters" site, you have to confirm that you are 18 years or older and that he had never seen a minor on Craigslist. Kinley testified that he used "casual encounters" "often" and had sexual encounters with "less than ten" people he met through the site.

Kinley testified that he answered the posting because he wanted to have sexual relations with someone 21 or older, and that he did not think Jake was younger than 18. Kinley testified that there were several red flags that made him believe that Jake might not be real. Kinley explained that he did not believe that Jake was a real teenager because Jake's e-mail was not linked to his name, Jake used a texting application, the photos Jake sent were not recent, Kinley could not find Jake on social media, and Jake made inconsistent statements in the conversation. Kinley testified that he thought he was talking to an older male engaging in role playing.

> At that point I truly believe it to be an older male who is probably lonely and doesn't have a lot of friends, doesn't have someone to have a sexual encounter with so his goal when posting an ad like this is to get sexual photos from someone, talk sexual so then later on he can go back and get off.

Kinley testified that when he said "yeah cool" in response to Pohl asking if he could "top" him, that it was not an agreement to engage in sexual relations. Kinley testified that he was waiting in the car because if the person he was texting turned out to be a minor, he could leave. He testified that he went to the McDonald's because he was curious to see who he had been talking to and that he used texting applications to maintain his privacy online.

Kinley was found guilty of both counts and sentenced to concurrent prison sentences. Kinley appeals.

5

II.

Kinley argues that the evidence was insufficient to demonstrate that he had the specific intent to, and he took a substantial step towards, the commission of rape of a child. We disagree.

A.

The State is required to prove every element of a crime beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). We review the sufficiency of the evidence de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). For a sufficiency of the evidence challenge, "we must view the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." State v. Townsend, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). Our review of sufficiency of the evidence is highly deferential to the fact finder's decision. State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). "We must also defer to the fact finder on issues of witness credibility." State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014).

A challenge to the sufficiency of the evidence admits the truth of the State's evidence. Witherspoon, 180 Wn.2d at 883. "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

A person is guilty of rape of a child in the second degree when:

the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

RCW 9A.44.076(1).

To be found guilty of an attempt to commit a crime, the defendant must take a substantial step towards the commission of that crime. RCW 9A.28.020(1). A person's conduct constitutes a substantial step if it is "strongly corroborative of the actor's criminal purpose." Townsend, 147 Wn.2d at 679 (citing State v. Aumick, 126 Wn.2d 422, 427, 894 P.2d 1325 (1995)). "Mere preparation to commit a crime is not a substantial step." Townsend, 147 Wn.2d at 679 (citing State v. Workman, 90 Wn.2d 443, 449-50, 584 P.2d 382 (1978)).

Washington follows the Model Penal Code of the American Law Institute (MPC) for the definition of substantial step, including its list of behaviors that constitute a substantial step. Workman, 90 Wn.2d at 451. The list of behaviors include: (1) "[e]nticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission," and (2) "possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances." MPC § 5.01.

B.

Kinley argues that his arrival at the McDonald's did not constitute a substantial step because his actions did not go beyond mere preparation. The State relies on Townsend, State v. Wilson, 158 Wn. App. 305, 308, 242 P.3d 19 (2010), and State v. Sivins, 138 Wn. App. 52, 56, 155 P.3d 982 (2007), to establish that there was sufficient evidence to demonstrate attempted second degree rape of a child.

In Townsend, the defendant was corresponding with a police officer who was acting as a 13-year-old girl named "Amber." Townsend, 147 Wn.2d at 670. The

communication included graphic sexual topics and pictures. Townsend, 147 Wn.2d at 671. The defendant arranged to meet Amber in a motel "to have sex with her." Townsend, 147 Wn.2d at 671. The defendant went to the motel at the appointed time and knocked on the door of the room in which he believed Amber was located and asked to see her. Townsend, 147 Wn.2d at 671. After he was arrested, the defendant admitted that he left his apartment intending to have sex with the 13-year-old Amber. Townsend, 147 Wn.2d at 671. The court held that sufficient evidence demonstrated that the defendant had taken a substantial step towards the attempted rape of a child because he had the intent to have sex with Amber, even though Amber was in reality a police officer. Townsend, 147 Wn.2d at 679.

Similar to Townsend, Kinley engaged in a graphic sexual conversation with Jake and he exchanged pictures with him. Kinley and Jake agreed to have sex, and Kinley drove to the agreed upon meeting place. Like Townsend, Kinley admitted to officers that he intended to have sex with the person he was conversing with.

In Wilson, the defendant responded to a Craigslist ad placed by a police officer posing as a woman advertising a "mother/daughter combo." The defendant corresponded with the officer, exchanged photographs and arranged to meet with the woman to have oral and full sex with "Jenny," a 13-year-old who would act as the woman's daughter for $300. Wilson, 158 Wn. App. at 309. The defendant arranged to meet the woman and Jenny in a Dick's Drive-In parking lot across the street from where they resided. Wilson, 158 Wn. App. at 310. Officers arrested the defendant in his car in the parking lot, where he had $300 in cash and he admitted to officers that he intended to have sex with the 13-year-old girl for $300. Wilson, 158 Wn. App. at 311. This court

found that there was sufficient evidence to convict the defendant because his actions strongly corroborated his intent to "commit the crime of rape of a child in the second degree." Wilson, 158 Wn. App. at 318. The court found that the defendant committed a substantial step when he exchanged photos with the woman, obtained her address, and drove to the agreed upon location, with the $300 in cash, and admitted that he had agreed to pay to have sex with Jenny. Wilson, 158 Wn. App. at 318.

As in Wilson, Kinley agreed to meet Jake in a public location, Kinley drove to the McDonald's, and he was arrested while he was waiting in his car. Although Kinley did not arrange to pay for sex with Jake, Kinley had engaged in a sexual conversation with Jake, including exchanging pictures, and Kinley explicitly agreed to let Jake "top" him. As the defendant did in Wilson, Kinley admitted to wanting to have sex with the person he had been texting.

In Sivins, a police intern created a Yahoo profile for a fictitious 13-year-old girl named "Kaylee." The defendant contacted Kaylee and they discussed her sexual experiences. The defendant mailed Kaylee a vibrator for her birthday. Sivins, 138 Wn. App. at 57. Kaylee and the defendant agreed to meet at a motel room for sex, and after the defendant went to the specific motel room, he was arrested. Sivins, 138 Wn. App. at 57. The court found that there was sufficient evidence to convict the defendant of attempted rape of a child because the defendant had sent sexually graphic messages to a 13-year-old, said he wanted to have sex with her, enticed her with pizza and vodka[4], drove five hours to meet her, and secured a motel room. Sivins, 138 Wn. App. at 61.

---

[4] The defendant brought condoms, lubricant, and alcohol to the motel room, and this evidence was suppressed. Sivins, 138 Wn. App. 52 at 60. The court later disclosed this evidence to the jury, but this court found that this disclosure was a harmless error. Sivins, 138 Wn. App. at 61.

The court found that these actions "were substantial steps that strongly corroborate his intention to have sexual intercourse with Kaylee." Sivins, 138 Wn. App. at 64.

As in Sivins, Kinley carried out a sexually graphic conversation with someone that claimed they were a minor, he agreed to have sex, arranged a time and place to meet, and then went to the meeting place, all of which strongly corroborated his intent to have sex with Jake.

Viewing the evidence in the light most favorable to the State, Kinley's arrival at the McDonald's constituted a substantial step which corroborated his purpose of having sex with a minor. See Townsend, 147 Wn.2d at 679. In their conversations, Pohl explicitly identified as the 13-year-old Jake, and then shared photos of an adolescent male and referenced being in high school and getting in trouble with his mom. Kinley proceeded to engage in a graphic sexual conversation with Jake. Kinley agreed to pick up Jake, and when Jake asked if he could "top" Kinley, Kinley agreed to engage in sexual relations with him. When Kinley drove to the McDonald's, the agreed upon meeting place, this action constituted a substantial step.

Kinley contends that he was arrested when he was still in the negotiating phase, as in State v. Grundy, 76 Wn. App. 335, 336, 886 P.2d 208 (1994). In Grundy, an officer posed as a drug dealer and approached the defendant. The defendant asked to see the drugs before purchasing them, but he was immediately arrested for attempted possession of cocaine. Grundy, 76 Wn. App. at 336. The court found that there was insufficient evidence to support the charge because the parties were still in the negotiating phase. Grundy, 76 Wn. App. at 338. Here, Kinley and Jake discussed Jake's sexual history in graphic detail and Kinley agreed to have sex with Jake. Kinley

10

arranged for a time and place to meet up with Jake, a purported minor, at a time when Jake's mom would be out of town. Unlike in Grundy, Kinley had formulated a plan to let Jake "top" him, and Kinley drove to pick up Jake so that he could engage in sexual relations with him. Because Kinley's actions go beyond the negotiation stage, his arrival at the McDonald's parking lot constituted a substantial step.

Although Kinley maintained that he drove to the McDonald's because he was curious to see who he had been texting, but that he would not have met up with Jake if he was actually 13 years old, this argument is self-serving and without merit. The only evidence presented to Kinley was that he was arranging to meet up with a 13-year-old for sexual relations. Despite Kinley's contentions, it is highly implausible that Kinley would place himself in this high risk position simply because he was curious.

We view the evidence in the light most favorable to the State. Townsend, 147 Wn.2d at 679. With the evidence presented at trial, a rational trier of fact could reasonably reject Kinley's arguments, and find that the sufficiency of the evidence supports that Kinley did have the intent to have sex with a 13-year-old, and that his arrival at the McDonald's constituted a substantial step. For these reasons, we affirm Kinley's conviction of attempted rape of a child.

III.

Kinley next argues that the information omitted an essential element of the offense of communication with a minor for immoral purposes. He contends that the information is deficient for omitting the essential element that he intended for the communication to reach a minor. We disagree.

A.

An accused has a right to be informed of the criminal charges against them under both the Constitution of the United States and the Washington Constitution.  U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (amend. X).  All essential elements of a crime, statutory or otherwise, must be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him."  State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991).  The goal of the essential elements rule is to give notice to an accused of the nature of the crime so that the accused may prepare a defense.  Kjorsvik, 117 Wn.2d at 101.  "The elements need not be alleged in the exact words of the statute so long as the information alleges the elements of the crime in terms equivalent to or more specific than those of the statute."  State v. Nonog, 169 Wn.2d 220, 226, 237 P.3d 250 (2010).

A challenge to the sufficiency of a charging document raises a question of constitutional due process and may be raised for the first time on appeal.  State v. Leach, 113 Wn.2d 679, 691, 782 P.2d 552 (1989); RAP 2.5(a)(3).  "Charging documents which are not challenged until after the verdict will be more liberally construed in favor of validity than those challenged before or during trial."  Kjorsvik, 117 Wn.2d at 102.  Where, as here, the challenge is not raised until appeal, the appropriate standard of review is the two-prong liberal construction test set in Kjorsvik.  117 Wn.2d at 106.  Under this test, the reviewing court must liberally construe the language of the charging document to determine if it contains the necessary elements, even if vague terms, of the crime charged.  State v. McCarty, 140 Wn.2d 420, 425, 998 P.2d 296

(2000). If so, then the reviewing court must determine if the language resulted in any actual prejudice to the defendant. McCarty, 140 Wn.2d at 425.

B.

The information alleged that Kinley committed the crime of communication with a minor for immoral purposes in violation of RCW 9.68A.090(2). That statute provides, in pertinent part:

> A person who communicates with a minor for immoral purposes is guilty of a class C felony . . . if the person communicates with a minor or with someone the person believes to be a minor for immoral purposes, including the purchase or sale of commercial sex acts and sex trafficking, through the sending of an electronic communication.

RCW 9.68A.090(2). The information included:

> <u>COMMUNICATING WITH A MINOR FOR IMMORAL PURPOSES, COUNT II</u>
>
> That on or about the 13th day of December through the 14th day of December, 2017, the said defendant, AARON LEE KINLEY, then and there being in said county and state, did communicate with a person under the age of 18 years or a person the Defendant believed to be under the age of 18 years, for immoral purposes of a sexual nature, through the sending of an electronic communication; in violation of RCW 9.68A.090, which violation is a Class C Felony.

Kinley contends that the information needed to include the nonstatutory element of intent to communicate with a minor—specifically, that the information did not allege that he intended the communication to reach Jake. Kinley cites State v. Hosier, 157 Wn.2d 1, 133 P.3d 936 (2006) to argue that intent for the communication to reach the minor is an essential element of the crime.[5] In Hosier, the Supreme Court held that

---

[5] Kinley also cites to State v. Aljutily, 149 Wn. App. 286, 289, 202 P.3d 1004 (2009), to support his argument that intent is a required element. However, Aljutily was examining if the statute was constitutionally overbroad. Aljutily used the Hosier definition of communication to reach its conclusion that the intent to reach a minor limits the breadth of the statute, and is targeted only at adults who are intending to communicate with children. Aljutily, 149 Wn. App. at 296.

13

"[f]orseeability is not an element of the crime of communicating with a minor for immoral purposes. Rather, the State must prove that the defendant intended that the communication reach the child." 157 Wn.2d at 15.

The question then, is whether the words used in the information charging Kinley with communication with a minor for immoral purposes would reasonably apprise him of the elements of the crime charged. Kjorsvik, 117 Wn.2d at 109. "Words in a charging document are read as a whole, construed according to common sense, and include facts which are necessarily implied." Kjorsvik, 117 Wn.2d at 109. Liberally construed, the language in the information fairly implies that Kinley intended his communication to reach Jake. The information alleged that Kinley communicated with Jake, who he believed to be a minor, for the immoral purposes of a sexual nature, by sending Jake an electronic communication. The language "through the sending of an electronic communication" to "a person under the age of 18 years" for immoral purposes of a sexual nature fairly implies that Kinley intended the communication to reach the minor.

Kjorsvik is analogous. In Kjorsvik, the defendant challenged his robbery conviction because the charging document omitted the implied essential element of "intent to steal." 117 Wn.2d at 96, 98. The Supreme Court stated that it would be "hard to perceive how the defendant" could have forcefully taken money from the shopkeeper while brandishing a weapon without intending to steal the money. Kjorsvik, 117 Wn.2d at 110. Likewise here, because the information alleges that Kinley sent electronic

communication to a person he believed to be a minor, it is readily inferred that through this volitional act, he intended for his messages to reach the minor.

Liberally construed, the information implies that Kinley intended that the communication reach Jake.[6]

IV.

During cross-examination, Kinley's counsel asked Detective Baker "if any child pornography or images were discovered on [Kinley's] devices?" The State objected, contending that because Kinley was not charged with child pornography, the inquiry was irrelevant. Kinley argued that the State had to prove his specific intent to prove his conviction of communicating with a child for immoral purposes and that a lack of child pornography on his phone showed that he was not interested in sexual relationships with children. The court sustained the objection. Kinley argues that by sustaining the State's objection, the court deprived him of his constitutional right to present a defense. We disagree.

"The Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant a meaningful opportunity to present a defense." State v. Giles, 196 Wn. App. 745, 756, 385 P.3d 204 (2016) (citing State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010)). This right to present a defense is not absolute. Jones, 168 Wn.2d at 720. "Defendants have a right to present only relevant evidence, with no constitutional right to present irrelevant evidence." Jones, 168 Wn.2d at 720.

---

[6] Additionally, under the liberal construction test, Kinley is required to demonstrate that he was actually prejudiced, which he has failed to do so here.

Assertions that evidentiary rulings violate a defendant's constitutional right to present a defense are reviewed pursuant to a two-step process. State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). First, we review the challenged evidentiary rulings under an abuse of discretion standard. Then, if necessary, we review de novo whether such rulings violate a defendant's constitutional right to present a defense. Arndt, 194 Wn.2d at 797-98.

"Evidence is relevant when it is both material—the fact to be proved 'is of consequence in the context of the other facts and the applicable substantive law'—and probative—the evidence has a 'tendency to prove or disprove a fact.'" Giles, 196 Wn. App. at 757 (quoting State v. Sargent, 40 Wn. App. 340, 348, n.3, 698 P.2d 598 (1985)).

Kinley argues that the absence of child pornography on his phone is relevant to show his lack of lustful disposition towards children. However, in order for evidence to be admissible to show lustful disposition, the evidence must generally relate to the defendant's lustful disposition towards a specific person. See State v. Ray, 116 Wn.2d 531, 547, 806 P.2d 1220 (1990); State v. Ferguson, 100 Wn.2d 131, 133-35, 667 P.2d 68 (1983); State v. Metcalf, 58 Wn. App. 817, 822-23, 795 P.2d 158 (1990). Evidence of general lustful disposition towards children is generally inadmissible. State v. Sutherby, 165 Wn.2d 870, 886, 204 P.3d 916 (2009) (evidence of child pornography was not admissible in trial regarding child molestation because it would only show defendant's general predisposition and not his sexual desire for the specific victim). If evidence of a defendant's use of child pornography is not admissible unless it relates to a specific victim, it is only logical that a lack of evidence is not admissible to show the defendant's lack of disposition toward children unless it relates to the victim.

Kinley has not demonstrated that the trial court abused its discretion when it sustained the State's objection. The court's ruling also did not violate Kinley's right to present a defense. Again, a defendant does not have a constitutional right to present irrelevant evidence. Jones, 168 Wn.2d at 720. Moreover, the court's decision to not allow testimony regarding the lack of child pornography on Kinley's cell phone did not preclude him from asserting a defense. The defense theory was that Kinley did not believe "Jake" was really only 13 years old. Kinley testified that he did not think the person he was communicating with was a minor and that the only reason he showed up at the meeting place was because he was curious to see who showed up. The inability to cross-examine the Detective Baker about any lack of child pornography on Kinley's cellphone did not prevent Kinley from asserting a defense.

V.

In his statement of additional grounds, Kinley argues that Pohl's conduct was outrageous and violated due process. He argues that the officers set the tone, pace, and subject of the dialogue, and initiated the sexual topics. We disagree.

For the State's conduct to be so outrageous that due process principles would bar the invocation of the judicial process to obtain a conviction, the conduct must be so shocking that it violates fundamental fairness. State v. Solomon, 3 Wn. App. 2d 895, 902, 419 P.3d 436, (2018). "Public policy allows for some deceitful conduct and violation of criminal laws by the police in order to detect and eliminate criminal activity. . . . Dismissal based on outrageous conduct is reserved for only the most egregious circumstances." Solomon, 3 Wn. App. 2d at 902. The court examines the conduct within the totality of the circumstances. Solomon, 3 Wn. App. 2d at 903.

17

In Solomon, a police officer acting as a 15-year-old girl posted on Craigslist casual encounters, and the defendant responded. Solomon, 3 Wn. App. 2d at 897. The defendant ended the conversation when the officer first disclosed that she was 15, but the officer kept prompting the defendant. Solomon, 3 Wn. App. 2d at 899. After some conversation, the defendant said I'm "not interested at all this is a setup up by the cops." Solomon, 3 Wn. App. 2d at 899. Despite the defendant's rejections, the officer continued communication with him, encouraging him to have sex with her. Solomon, 3 Wn. App. 2d at 899-900. This court determined that the conduct was outrageous because the officer used extremely graphic sexual language and the officer persistently solicited the defendant even though the defendant attempted to discontinue the conversation seven times. Solomon, 3 Wn. App. 2d at 915-16.

The facts of this case do not amount to outrageous conduct as in Solomon. Kinley responded to the Craigslist post initially, which was sexual in nature. Kinley requested photos of Jake. Although the officer acting as Jake pushes the conversation away from friendship, Kinley remained engaged in conversation. Kinley proceeded to ask Jake about what he'd done and what he was interested in trying sexually. Although the officer used sexual terms, the terms are not the overly graphic, repugnant language used in Solomon. The officer here does suggest sexual topics, but the officer's conduct does not come close to the level of persistent solicitation in Solomon. Additionally, Kinley does not try and terminate the conversation and Kinley asks sexually explicit questions without significant prompting. The officer's conduct here does not constitute outrageous conduct.

Kinley also argues that he did not admit that he wanted to have sex with Jake.

In the context the charge of attempted rape of a child, Detective Baker testified that Kinley "expressed wanting to have sex with the person that he thought he was talking to." Kinley has presented no evidence to rebut Detective Baker's testimony, and the trial court reasonably believed Detective Baker's testimony over Kinley's denial. In the context of the charge of communication with a minor for immoral purposes, "Immoral purpose" as used in the statute as refers to "sexual misconduct." Hosier, 157 Wn.2d at 11. The statute covers a broad range of behavior, and "prohibits communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct." State v. McNallie, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993). Because the State does not need to prove that Kinley intended to have sex with the minor as an element of communicating with a minor for immoral purposes, we need not address this argument.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Smith, J._        _Chun, J._